(No. 24062.—

THE BOYER CHEMICAL LABORATORY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BEULAH STONE, Defendant in Error.)

*Opinion filed June 11, 1937—Rehearing denied October 7, 1937.*

ANGERSTEIN, PIGGOTT & ANGERSTEIN, (THOMAS C. ANGERSTEIN, and GEORGE W. ANGERSTEIN, of counsel,) for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause concerns the review of an award entered by the Industrial Commission and confirmed by the circuit court of Cook county for the death of Clyde C. Stone, husband of the defendant in error, who, in his lifetime, was employed as sales-manager in charge of the retail cosmetic trade of the plaintiff in error. The deceased had supervision of the services of some twenty-five salesmen and a larger number of other employees. His salary was $1000 per month. He was killed in a collision of the automobile, in which he was riding, with a railway train, a few miles north of Louisville, Kentucky, while driving toward Indianapolis. The defendant in error argues that Stone was on the business of the plaintiff in error at the time of his death, while the latter contends that he was on a vacation, and the question in the case is whether his death arose out of and in the course of his employment.

There is little dispute as to the facts. It appears that Stone and his family had formerly lived in the neighborhood of Owensboro and Louisville, Kentucky, and had friends and relatives in or near both cities. Stone left Chicago on his vacation on August 9, and, according to the testimony of the assistant superintendent of the plaintiff in error, was to return to Chicago August 20. A sister of the defendant in error living near Owensboro, Kentucky, stated that she had a letter from defendant in error saying that she and her husband were coming to spend a week's vacation with her, and that he had to be back in Chicago to go to work on Monday morning, August 20. The Stones, together with one Minor Belle Moseley, a niece of the de-

fendant in error, drove from Chicago to Owensboro, arriving there on August 10. During their visit in and near Owensboro, defendant in error received a letter or card from a sister in Louisville, inviting them to come and visit her. On August 16 they left Owensboro and drove to Louisville, arriving there about 9:30 P. M. They stayed that night at a hotel and on Friday morning, August 17, defendant in error and the deceased went to the former's sister. The deceased left for the day and returned for defendant in error about 4:00 P. M. On Saturday morning, August 18, they left Louisville for Indianapolis and Chicago.

In addition to these facts, defendant in error offered the testimony of Maurice Birkhead, a boy who was returning to Chicago with them, that a couple of hours before leaving Owensboro deceased had said that they would have to go through Louisville and Indianapolis, as he had to make some calls; that in Louisville deceased had stated that they could spend their time in whatever way they wanted the next day, as he had some calls to make on druggists, and that he also replied, to an invitation to remain overnight with a friend, that he could not do so as he had to call on a druggist in Indianapolis and might not be able to reach him on Sunday. This witness stated, however, that he did not know what deceased did while he was in Louisville. Defendant in error also offered the testimony of one Leon Abraham, a druggist in Louisville, who stated that he had been acquainted with the deceased for more than thirty years; that they were good friends, socially and in a business way; that he had purchased from salesmen of plaintiff in error specialties which the latter was engaged in manufacturing. He testified that on Saturday, August 18, about 10 o'clock in the morning, deceased came to his store and while there asked if he needed anything, and that he said he did not but suggested that he would like to establish a subsidiary agency for the Boyer products, and that the deceased said he would have to take that up with the firm

when he got back to Chicago. He also testified, over objection, that the deceased stated he was going to Indianapolis, and put in a long distance call to get in touch with someone to see whether he would be there so he would not lose any time in seeing him. This witness also testified that he had been purchasing from the regular Boyer salesman and that he was satisfied deceased did not come to his store just to get an order. Other testimony was given, over objection, as to statements made by the deceased, to the effect that he would be in Louisville and Indianapolis on business.

The evidence shows that at the time Stone left Chicago he took no samples with him; that he was on his vacation; that such was the purpose of the visit to Owensboro and Louisville, and the question arises whether the trip was one for vacation purposes during which the deceased, of his own volition and as but an incidental feature of the trip, called on druggists. There is no evidence that he sold anything to anybody. No orders were received by plaintiff in error as a result of this trip. He told the witness Abraham that the matter of the subsidiary agency would have to be taken up with the office in Chicago.

Plaintiff in error contends that the evidence, as to statements of the deceased that he intended to call on druggists, was incompetent. Defendant in error, on the other hand, insists that these statements were competent as part of the *res gestæ.* The rule is, that statements by a deceased person, made at the time of his departure upon a journey, with reference to his destination, may be proved, but in order to be admissible as part of the *res gestæ* the statement must be immediately connected with the act of departure. (*Molloy* v. *Chicago Rapid Transit Co.* 335 Ill. 164; *Foster* v. *Shepherd,* 258 id. 164; *Chicago and Eastern Illinois Railroad Co.* v. *Chancellor,* 165 id. 438.) The test of the applicability of that rule is whether the declaration sought to be considered as a part of the *res gestæ* is so separated from the act by lapse of time as to render it probable that

the party making the declaration was speaking from design rather than instinctive impulse. (*Chicago and Eastern Illinois Railroad Co.* v. *Chancellor, supra.*) The general rule is, that statements made or acts done before the principal act occurred, or was within the contemplation of the parties, cannot be regarded as a part of the *res gestæ,* although separated by but a short span of time, unless the undesigned act or declaration tends to explain the principal act, otherwise the declaration or act cannot be said to throw any light upon the motives of the party. In *Foster* v. *Shepherd, supra,* it was held that in order to be considered a part of the *res gestæ* the statement must be immediately connected with the act of departure. It is said in Greenleaf on Evidence, section 108, and often announced since: "Declarations, to become a part of the *res gestæ,* must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts which they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." The statements made by the deceased, that he had some calls to make in Louisville, were made some two hours before leaving Owensboro, and the statement made to Abraham, concerning a call in Indianapolis, was made the day before he left Louisville. Under the rules herein mentioned, those statements were incompetent and inadmissible.

Whether the death of the deceased arose out of and in the course of his employment depends, in a case of this kind, upon the purpose of the trip taken. The test is whether he was serving some purpose of his own, or his vacation had been finished and he had returned to the service of his employer. In *Mark's Dependents* v. *Gray,* 251 N. Y. 90, 167 N. E. 181, the test is laid down as follows: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.

(*Clawson* v. *Pierce-Arrow Motor Car Co.* 231 N. Y. 273, 131 N. E. 914.) If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." It is not denied that the purpose of the journey to Owensboro was the enjoyment of a vacation of the deceased among his friends and relatives and those of his wife. His calling upon a customer of his employer appears to have been but incidental to the purpose of the trip. The only evidence tending to establish that he called on the trade, other than the testimony of Abraham herein discussed, was the incompetent statements of witnesses as to declarations he had made.

It is conceded that it was incumbent on the defendant in error to prove by direct and positive evidence, or by evidence from which the inference can fairly and reasonably be drawn, that the accidental injury causing the death of which complaint is made, arose out of and in the course of the employment of the deceased. *Jolly* v. *Industrial Com.* 341 Ill. 46; *Standard Oil Co.* v. *Industrial Com.* 339 id. 252; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459.

The defendant in error relies on two cases of this court, *Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89, and *Kennedy-Van Saun Corp.* v. *Industrial Com.* 355 id. 519. In the former of these two cases Sawyer, the employee, was entitled to take a week's vacation. A day or two prior to his starting thereon the president of his employer requested that he, on company time, on the day following the close of his vacation, call upon druggists in certain cities in Indiana, and it was admitted that it would be necessary to have someone else do that work if Sawyer had not done it. In the *Kennedy-Van Saun case,* Olvey, the employee, was engaged for his employer at Michigan City, Indiana. By letter he stated to his employer that he would be absent

from work in Michigan City for two days following Christmas but "would check up on as many calls as possible," particularly in certain localities which he named; that he would be back in Michigan City on Monday, December 29. The purpose of his visit to these various other cities was clearly that of the business of the company and before he departed from Michigan City it was understood that he was to make these calls. In both these cases it was held that the evidence was sufficient to sustain the finding that the accidental injury arose out of and in the course of the employment.

Here, there is a total absence of evidence of any prearrangement for taking care of business or any instructions by plaintiff in error, the employer, any communications between them or any indication that he had any duty to call on the trade during the time of his vacation. He was sales-manager; he did not sell directly. He happened to be in Louisville and called on Abraham who was a customer of the plaintiff in error. He was not to return to his work until Monday, August 20. Applying the rule as announced by Justice Cardozo in *Mark's Dependents* v. *Gray, supra,* it seems clear that the purpose of his visit was social and personal to himself; that his calls, if he made any other than the call upon Abraham in Louisville, were but incidental and he would not have gone to Louisville for that purpose. There is also evidence that he, with defendant in error, was invited to Louisville by the latter's sister. This case therefore is clearly distinguishable from the *Irwin-Neisler & Co.* and *Kennedy-Van Saun cases* herein referred to.

The findings of the commission that the death of Stone arose out of and in the course of his employment, is unsupported by competent evidence.

The judgment of the circuit court is reversed and the award is set aside.

*Judgment reversed, award set aside.*