(No. 26823.—

LEON ANTOSZKIEWICZ *et al.,* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(KIETRYN BARTKOVSKY, Defendant in Error.)

*Opinion filed January 19, 1943—Rehearing denied March 10, 1943.*

150

WENDELL H. SHANNER, and ANGERSTEIN & ANGERSTEIN, for plaintiffs in error.

LOUIS M. MARCH, and BRODY & ZIMMERMAN, (ROBERT L. BRODY, of counsel,) for defendants in error.

Mr. JUSTICE FULTON delivered the opinion of the ocurt:

In this case a writ of error was allowed by this court to review the judgment of the superior court of Cook county. The case arises under the Workmen's Compensation Act. It involves an application for compensation filed by Kietryn Bartkovsky, as mother and next friend of Elizabeth and Anna Podlasek, on account of the death of their father, Kayeton Podlasek, and against Leon Antoszkiewicz and Antonina Antoszkiewicz. There is no serious material dispute as to the facts in the case. The claim

was originally heard by an arbitrator of the Industrial Commission, who decided the issues in favor of the defendant in error and awarded her compensation death benefits under the provisions of paragraph (a) of section 7 of the Workmen's Compensation Act, (Ill. Rev. Stat. 1941, chap. 48, par. 144,) to be used solely for the support, education and maintenance of the above-mentioned children, Elizabeth and Anna Podlasek. On review, the Industrial Commission affirmed the decision of the arbitrator and ordered that such decision stand as the decision of the commission. Plaintiffs in error removed the case to the superior court of Cook county by *certiorari*. In that court the decision of the arbitrator and of the commission were affirmed.

The sole question presented in the case is: "Did the accidental injury which caused the death for which compensation is claimed arise out of and in the course of the deceased's employment? The facts show that on October 7, 1940, Leon Antoszkiewicz, one of the plaintiffs in error herein, owned a three-story apartment building located on the northeast corner of Fifty-ninth street and Racine avenue in Chicago. The building had two entrances, one on the Racine side which bore the number 5863 South Racine, and one on the Fifty-ninth street side which bore the number 1156 West Fifty-ninth street. Kayeton Podlasek, for whose death compensation is claimed, had been employed by the above-named plaintiffs in error about three weeks prior to October 7, 1940, to do general janitor work in and around the above described apartment building. On said date and at about 6:30 o'clock P. M., a tenant and his wife, then living in an apartment on the first floor on the Racine side of the building, heard a loud crash in the hall outside their apartment. Shortly thereafter, the tenant went out into the hall and found the decedent lying in the hall with his feet on the stairs pointed east, and his head and body on the hall floor pointed west. The deceased

was gasping and blood was coming from his mouth and he was obviously dying. The tenant called the police, who arrived within a very few minutes, and the deceased was taken to the Englewood Hospital where he was pronounced dead from a broken neck. The hall and stairway were well lighted and the only movable object was a ten-quart galvanized pail containing dirty water and some dirty rags, which was sitting near a closed door at the end of the hallway. This door when opened led to the basement stairs and to the boiler. Shortly before being found at the foot of the stairs, the deceased had been seen entering the building at about 6 o'clock P. M., dressed in his street clothes and a cap, and when he was found at about 6:30 o'clock P. M., he had a sweater coat on and no cap. There was further testimony that before entering the building, he had crossed Fifty-ninth street and had stopped at the newsstand at the corner of the building to look at a paper. From the newsstand the deceased had been seen to cross towards, and to enter, the Racine-avenue entrance to the building. The deceased lived alone in a room on the second floor of the building and to reach that room he had to go through the Racine entrance and up the stairway, at the foot of which his body was found. The testimony of the tenant and his wife, who discovered the body, discloses that there was heat in the apartment on the day of the accident and that they had been accustomed in the past to call upon the janitor for service at any time during the day or night.

The news dealer, Feinstein, testified that when the decedent stopped at his newsstand, he smelled liquor on Podlasek's breath and that he walked as if he was drunk, in fact he was drunk. The police officer, who responded to the telephone call from the tenant five minutes after the call came in, testified that he was "awful close" to the deceased and could smell no liquor on him at all and that there was no odor of alcohol about his clothes. Doctor Snider, who attended the decedent at the mortuary, testi-

fied that he did not, upon examination, detect any alcoholic fumes. There were no eyewitnesses as to the accident or to what the deceased was doing at the time of the accident which caused his death. The only controversial•facts are with reference to whether or not the decedent was under the influence of liquor at the time of the accident, and some conflicting testimony between plaintiffs in error and the tenants of the building as to whether there was heat in the apartments on October 7, 1940. The plaintiff in error, Leon Antoszkiewicz, testified that he had placed the pail of water and rags in the hall on Sunday, the day previous to the accident. He said that he obtained the water from the basement, washed the glass in the doors but did not take the pail of water to the basement as he was dressed in his Sunday clothes and did not want to dirty them. His testimony is not corroborated by any other witness, and his testimony is somewhat weakened by the fact that he was called as a witness at the coroner's inquest and made no mention of the pail of water or the rags.

The plaintiffs in error assert that the facts are not in controversy, and that, therefore, the sole question whether the employee received injuries which arose out of and in the course of employment, is a question of law. The conflict in the testimony over the evidence of liquor in and about the person of the deceased just prior to his injury, and the disparity of the testimony between the plaintiffs in error and the tenants over the existence of heat in the apartment building on October 7, show that the facts were somewhat in dispute. The rule is well established by this court, that it will not on review of an award made by the Industrial Commission disturb the factual determinations of that body, unless the same be manifestly against the weight of the evidence. (*Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Rodriguez* v. *Industrial Com.* 371 id. 590.) This court has likewise held that the petitioner has the burden of establishing by clear and convincing evidence that the

accidental injury arose out of and in the course of employment. (*Rosenfield* v. *Industrial Com. supra; Boyer Chemical Laboratory Co.* v. *Industrial Com.* 366 Ill. 635.) "An injury to be compensable must arise from a risk reasonably incidental to the employment and not one to which the public generally is subjected. A risk is incidental to the employment when it belongs to or is connected with what an employee has to do in fulfilling his contract of service. [Citations.] It is not sufficient that an accidental injury was received by an employee in the course of his employment, but it must arise while he was acting within the duties of his employment or doing some act incidental thereto, and both elements must be present at the time of the injury in order to justify compensation. (*Masurski* v. *Industrial Com.* 364 Ill. 445.) * * * The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it." (*Schwartz* v. *Industrial Com.* 379 Ill. 139.) The mere fact that the employment duties take the employee to the place of the injury, and that but for the employment he would not have been there, is not, of itself, sufficient to give rise to the right to compensation, but there must be some causal relation between the employment and the injury. (*Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241.) Proof of an accidental injury need not be made by the testimony of an eyewitness, but such proof may be made by circumstantial evidence, and it is sufficient if, from the facts proved, the inference can logically be drawn as to how the injury occurred and that it arose out of and in the course of employment. *Ervin* v. *Industrial Com.* 364 Ill. 56.

The fact that the decedent, Kayeton Podlasek, was employed by the plaintiffs in error as a general janitor living upon the premises and performing duties in and about the building without any limitations as to hours; and the

further fact that just a short time previous to the accident he had entered the building wearing a coat and a hat or cap; and that shortly thereafter the tenants in the building heard a loud crash in the hall outside their apartment; that in a few moments the tenant went into the hall and found the decedent lying on the hall floor at the foot of the stairs, gasping, and with blood coming from his mouth; that the tenant called the police who took the deceased to the Englewood Hospital where he was pronounced dead from a broken neck; and that a bucket of water and dirty rags were standing in the hall a few feet away from the body of the decedent, would readily lead the normal mind immediately to reach the conclusion that the deceased fell on the stairs while in the performance of his duties as janitor of said building. No logical conclusion can be reached from the testimony other than that the deceased fell on the stairs, receiving an injury which caused his death.

Counsel for the plaintiffs in error cite many cases upon which they strongly rely and from which they have quoted in the petition as grounds for reversing the judgment of the superior court. The facts in those cases differ materially from the facts here and are not controlling as to the factual situation presented in this case. In *Schwartz* v. *Industrial Com. supra*, the decedent died as a result of food poisoning after eating in a restaurant over which the employer had no control. This court held in that case that the eating of the poisoned food at the time and place described would constitute an accidental injury suffered in the course of his employment, but that it was not' such accidental injury as arose out of his employment.

In the present case the inference might be very logically drawn, from the facts, that the deceased not only suffered the accidental injury in the course of his employment, but that such accidental injury arose out of his employment. His employment as janitor of the building called him to the place where the accident occurred, many times during

each day, and his change of clothing after entering the building, and the presence of the pail of water and rags at the foot of the stairway, were sufficient facts from which an inference might be drawn that he was actually employed in his duties when the injury occurred. The facts proved in this case, and the reasonable inferences to be drawn therefrom, afford a basis for the Industrial Commission's conclusion, and this court cannot say that its finding was manifestly against the weight of the evidence. Even though it might be said that the essential facts upon which determination of the question in this case rests are in no way in dispute or in controversy, there is sufficient evidence in this record, as a matter of law, to support the decision of the Industrial Commission.

The finding of the Industrial Commission was, therefore, correct and the superior court properly confirmed the same. The judgment of the superior court is, therefore, affirmed.

*Judgment affirmed.*