William O. Turnbull, Administrator of the Estate of Judy Ann Turnbull, Deceased, Appellee, v. Earl Tracy Porter, Jr., Appellee, and Claude T. Hotz, Administrator of the Estate of Thomas Claude Hotz, Deceased, Appellant.

### Gen. No. 64–31.

Third District.

December 1, 1964.

Rehearing denied and opinion modified February 24, 1965.

374a

Welch & Blachinsky, of Kewanee (R. Sheridan Welch and Charles W. Blachinsky, of counsel), for appellant, Hotz.

Brian & Wilson, of Toulon (F. B. Brian, of counsel), for appellee.

As Modified on Denial of Rehearing.

ROETH, J.

Suit was brought by the Administrator of the Estate of Judy Ann Turnbull, deceased, against the Estate of Thomas Claude Hotz, deceased, and one Earl Tracy Porter. The action arises out of an automobile collision in which plaintiff's and defendant's decedent were killed. Both were young people, Judy 14 years old and Thomas 17 years old. The collision occurred on December 9, 1960, at about 10:30 p. m. Judy was riding as a guest in an automobile

driven by Thomas and owned by his father. The evidence shows that the automobile was in good condition and being driven by Thomas, hereinafter referred to as defendant, with his father's permission, in an easterly direction, along a township road near an intersection with State Route 91. A stop sign was located at the west edge of the State Route giving preference to traffic on the State Route over traffic on the township road. The defendant, Porter, who we shall refer to as Porter, was driving a pickup truck on Route 91, in a southerly direction, approaching the aforesaid intersection, where the two vehicles collided. The complaint, as amended, sought recovery against defendant under the Guest Statute of the state and against Porter for negligence and wilful and wanton misconduct. Defendant filed an answer, denying generally all of the material allegations. On the date of the trial defendant attempted to file an additional answer in which defendant charged Porter with sole responsibility for Judy's death. Hereafter we shall refer to Judy as plaintiff. The additional answer alleged, in substance, that Porter drove his automobile in a negligent and careless manner and alleged certain acts of Porter that constituted negligence and that such negligence was the proximate cause of the accident. It further alleged that defendant was free from negligence and wilful and wanton misconduct. The trial court denied defendant's motion to file this additional answer. The case was heard by a jury, and after plaintiff's evidence, plaintiff moved to dismiss Porter from the case. Defendant resisted the motion, but the lower court allowed the same and dismissed Porter. A verdict was returned for plaintiff against defendant and judgment entered on that verdict. Defendant submitted a Special Interrogatory to the jury asking if they found defendant was guilty of wilful

and wanton misconduct, to which the jury answered "yes."

The facts show that defendant was driving his car slowly in an easterly direction along the Township Road, and drove onto the State Road. Porter was driving south on the State Route and the front of his truck struck the left side of defendant's car at about the center. Witnesses Wayne and Elizabeth Miller testified that they were about ⅛ of a mile from the intersection at the time of the collision, facing north, and that they were going to turn into the driveway of their home, situated on the west side of Route 91 and at the point where they saw the accident. It was a clear, cold night. As they approached their driveway and before turning into same, they saw a vehicle approaching down the hill, headed south. This was the Porter truck. They also saw defendant's car coming along the township road and saw it drive in front of the Porter vehicle. Mr. Miller testified he saw the impact. He stated the lights of both cars were on when he first saw the automobile coming from the west. This car was at the edge of the pavement of the State Route and coming onto the pavement. The impact was at the center of defendant's car, between the two doors. The automobile was a four door sedan. He could not estimate the speed of defendant's car, except to say it was traveling slowly. He did not see it stop, but it was at the edge of the pavement, moving onto the pavement, when he first saw it. He first realized there would be a collision when the lights of the truck disappeared as defendant's car pulled in front of it. He stated the intersection was visible to him when he saw the collision; that he observed skid marks at the scene, about 50 feet of them, and they were mostly in the southbound lane of traffic. In his opinion the impact took place west of the centerline of Route 91 and in the middle of the intersection. In testifying as to the

374d

terrain, he said that the Township Road is higher to the west of the State Road and declines gradually as it reaches Route 91, with the high point being about 330 feet west of the intersection; that there is an embankment at the intersection, but that it does not create an obstruction to the view. He stated he felt traffic coming from the west could see traffic from the north but added that he believed it was harder to see a car coming from the north, as you approached the intersection from the west than it would be to see a car coming from the west as you approach the intersection from the north. Mrs. Miller testified that she first observed the lights of the car coming from the west, and it was traveling at a low rate of speed. It was a short distance from the intersection. She also saw the lights of the car coming from the north. She is not sure if defendant's car stopped. She knew there had been an accident when, as she stated, "the lights have disappeared."

Plaintiff administrator testified that his decedent could not drive a motor vehicle and did not have a license. There were no witnesses as to plaintiff's acts or conduct at or immediately prior to the accident. She was seen in the automobile, with defendant driving in the Village of Toulon, a short time prior to the accident. She had, along with defendant, attended a basketball game.

The evidence also shows that Porter was driving his father's pickup truck. At the time of the accident there were four persons seated in the front seat. One of the passengers testified the truck was traveling at 30 to 40 miles per hour and Porter stated he was traveling from 40 to 45 miles per hour at the time of the collision. Defendant's automobile was not seen until it appeared in front of Porter's truck. Porter stated that defendant's automobile suddenly appeared in front of him "like he was knocked out in front of me."

The testimony of Porter and others in his truck was that Porter was in his own lane of traffic. There is evidence that Porter had been drinking. In fact, he plead guilty to a charge of driving while under the influence and reckless driving and served a year at Vandalia.

The court permitted testimony of the careful habits of plaintiff but refused to permit such testimony on behalf of the defendant. There is no dispute that defendant was the driver of the automobile and plaintiff his guest passenger.

██ Counsel for defendant contend the court erred in denying leave to file the additional answer, relying on Section 46 of the Practice Act and Davidson v. Olivia, 18 Ill App2d 149, 151 NE2d 345. Counsel do not, however, show how defendant was prejudiced by the court's action. Section 46 of the Practice Act specifically provides that the parties may amend the pleadings before final judgment. The granting of leave to so amend is, however, directed to the sound discretion of the court. Davidson v. Olivia, supra. We do not believe under these facts that the court abused its discretion nor that defendant was prejudiced by the ruling. The additional answer did not constitute a counterclaim and would not have permitted defendant to introduce evidence he was not at liberty to introduce under his answer. Nor would defendant's right to keep Porter in the case nor his right to call Porter as an adverse or hostile witness have improved. The additional answer was superfluous and defendant was not prejudiced nor has he been able to show where he was prejudiced by the lower court's ruling.

Counsel for defendant next contend the court erred in dismissing Porter from the case over defendant's objection. The record discloses that at the end of plaintiff's testimony, plaintiff administrator moved to dismiss Porter from the case. Porter joined in the mo-

tion, arguing for such dismissal, although he did not move for dismissal or directed verdict. Counsel for defendant point to testimony from which they claim a jury might reasonably conclude that Porter was guilty of negligence or wilful and wanton misconduct, and argue that by Porter's dismissal they were denied the right to prove Porter was solely responsible for the accident. This is not borne out by the record. Counsel for defendant introduced testimony of Porter's conviction for driving while under the influence and evidence that Porter had been drinking prior to the accident. Porter need not have been a party to the suit in order for defendant to place blame for the occurrence upon him. The plaintiff was not required to sue Porter and having done so he need not persist in this suit. Whatever the motive in dismissing Porter, plaintiff had, under proper circumstances the right to do so. Counsel for defendant cite Cascio v. Bishop Sewer & Water Co., 2 Ill App2d 378, 119 NE2d 531, and Thillman v. Early, 340 Ill App 538, 92 NE2d 346. Neither case is of help to the defendant. This argument is based primarily on the proposition that Porter's removal left the jury no alternative but to find against the defendant. The argument has no merit. While Porter's removal prevented a verdict being entered against him it did not have the effect of directing a verdict against the defendant for to so hold would be to prevent a court from dismissing a defendant from a lawsuit by directing a verdict. Such a finding would compel a plaintiff to sue everyone involved in an accident despite plaintiff's beliefs as to the responsibility of the parties and would prevent settlement in cases involving multiple defendants, except on joint agreement.

■■ Plaintiff did not call Porter as a witness, nor has defendant shown what plaintiff did that can be classified as taking unfair advantage of defendant.

374g

■■■■■■■■■

Plaintiff was not required to call Porter as a witness although counsel for defendant infer in their argument that he had some obligation in this regard. The passengers in Porter's truck were called and counsel for defendant cross-examined each of them. Porter's counsel had the duty to his client to establish his freedom from negligence and remove the responsibility of the collision from Porter. The record fails to show that Porter's and plaintiff's counsel acted improperly. Underlying motives, if not manifested in prejudicial acts, are no basis for reversal. Counsel for defendant complain that Porter was solely responsible for the accident. If this is true they could certainly have filed a cross complaint and protected themselves from Porter's dismissal and possibly against a directed verdict. Counsel's motive in not so doing may well be the same motive attributed to plaintiff. This court is compelled, therefore, to say that unless prejudice is established, unless a procedural advantage is taken of a codefendant as illustrated in Cascio v. Bishop Sewer & Water Co., supra, and Thillman v. Early, supra, the court cannot and should not find dismissal to be error.

Section 52 of the Practice Act provides:

> "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or his attorney, and upon payment of costs, dismiss his action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter he may dismiss only on terms fixed by the court (a) upon filing a stipulation to that effect signed by the defendant, or (b) on motion specifying the ground for dismissal which shall be supported by affidavit or other proof. . . ."

■ It should be noted that plaintiff's motion was not to dismiss Porter without prejudice. The court is

374h

of the opinion that Section 52, while intended to protect the parties, does not prevent dismissal of a defendant on motion of the plaintiff and agreement by the defendant sought to be dismissed unless the remaining defendants can establish they were prejudiced by such action. Defendant cites 16 ILP 209, Section 13. That authority holds that the court has a duty to give effect to an agreement of the parties to dismiss an action. Schmalzl v. Derby Foods Inc., 341 Ill App 390, 94 NE2d 86, Feiertag v. Reichmann, 21 Ill App2d 215, 157 NE2d 818, Miller v. Miller, 332 Ill 177, 163 NE 343. In Schmalzl v. Derby Foods Inc., supra, the court held that it was error not to grant a similar motion and stated where the dismissal is agreed to by the plaintiff and the defendant seeking dismissal Section 52 of the Practice Act does not apply. The record failing to disclose any advantage being taken of defendant by the dismissal, we feel that the lower court did not err in this regard.

Counsel for defendant further allege error in the court's refusal to allow defendant to call Porter as an adverse or hostile witness. They fail, however, to argue the point in their brief. They do not show what they hoped to prove by permitting this right, nor do they cite law to substantiate this point. The record fails to disclose that the court abused its discretion in its ruling that the defendant had in fact established his right to so call Porter.

 Counsel next contend the court erred in its refusal to allow testimony of the careful habits of the decedent, Thomas Hotz. They argue that the law allowing such proof applies equally to plaintiffs as defendants. They argue that there were no eyewitnesses to the occurrence and therefore they should have been permitted to introduce such careful habits testimony. Counsel urge that the lower court ruled precisely but erroneously on that point. We cannot agree with this

contention. The witnesses, Mr. and Mrs. Miller, and passengers in Porter's truck each testified as to the movements of the defendant's automobile. In substance this testimony is that the defendant drove his automobile onto the highway and into the path of the Porter truck failing to yield the right of way. From the testimony of these witnesses the accident occurred in the southbound lane of traffic. This was corroborated by testimony relating to skid marks. From this testimony it is impossible to see how the contention can be made that there were no eyewitnesses. Counsel concede correctly that testimony of careful habits is admitted only as a matter of necessity in the absence of better proof. As to the movements of the defendant's automobile, there is clearly better proof. It is not disputed that defendant was driving that automobile and proof of careful habits of the defendant should not be allowable under these circumstances. While the lower court did at one point indicate it was allowing such testimony on behalf of the defendant on the basis of the stipulation and the fact that there were no eyewitnesses, it appears from the abstract that the court ultimately refused or denied the use of such testimony because of the existence of eyewitnesses as to defendant's acts. From the abstract generally it must be reasonably concluded the court felt there were, however, no eyewitnesses to plaintiff's actions. In any event and whatever the court's motive, the ruling was proper. The eyewitness testimony was confined to the action of the automobile and not the occupants and the only conclusion that can be drawn from it was that defendant drove his automobile onto the highway and failed to yield the right of way to the Porter vehicle. What plaintiff's acts were at that particular time are unknown. There is nothing to indicate, nor can we assume, plaintiff failed to act when the law imposed a duty upon her to act. It is admitted that

defendant's conduct cannot be imputed to her. Yet defendant is in substance urging for this finding.

In Driessens v. Verkruyse, 46 Ill App2d 87, 196 NE 2d 353, this court held, quoting from Petro v. Hines, 299 Ill 836, 132 NE 462, 18 ALR 1106:

> "(W)here there is an eye witness who saw the infliction of the injury, the jury must then determine from the testimony of this witness and from the facts and circumstances surrounding the injury whether deceased was careful or negligent, and in such case evidence of the habits of deceased as to care and prudence is not admissable."

Early in the proceedings the parties entered into a stipulation or agreement relating to eyewitnesses. The same was not reduced to writing and defendant now contends the stipulation was intended to and did apply to defendant as well as plaintiff. The abstract itself does indicate ambiguity in the stipulation. Plaintiff on the other hand argues in its brief that the stipulation was meant to apply only to his decedent. Despite the attitudes of either party the record illustrates that plaintiff had the right to introduce good habit testimony and defendant does not raise this question in his brief. We cannot on the facts here say the lower court ruled the stipulation was meant to be conclusive as to eyewitnesses to the accident itself. In final analysis it appears that the court ruled without reference to the stipulation. The abstract does not contain the court's ruling or statements at the time it struck defendant's careful habits testimony. In any event we are of the opinion that the lower court arrived at the correct result whatever its reasoning may have been. If a distinction is not made as set out in this opinion the result will be to impute to the plaintiff the conduct of the defendant at the time of the accident.

■ Counsel next contend the trial court erred in striking testimony concerning a statement made by one of the passengers in Porter's truck immediately after the collision. The witness, Miller, stated that when he arrived at the scene of the collision one of the women in Porter's truck said as she was getting out of the truck, "I wanted to drive but he wouldn't let me." Defendant contends the testimony should have been allowed under the res gestae rule. In Peterson v. Cochran & McCluer Co., 308 Ill App 348, 31 NE 2d 825, the court said:

> "Whether the circumstances under which a declaration was made are such as to make it reasonably probable that it was spontaneous presents a preliminary question for the determination of the trial court. The question of admissibility is one of administration, each case being properly decided upon its own facts, and in this regard the trial court should be clothed with a reasonable degree of latitude, since the application of the principle depends on the circumstances of the particular case."

We do not feel the court abused its discretion. The testimony tends to prove Porter's condition just prior to the collision and does not prove a defense to the claim against the defendant. The proof offered went to Porter's competency to drive and did not tend to establish defendant's innocence. In 18 ILP 201, Section 71, that authority says:

> "Under the rule as to the admissibility of evidence known as the 'res gestae rule' where the making of a statement in controversy, or the doing of an act, assists in constituting the transaction, or in

proving per se a relevant fact, the declaration or act is competent."

Under the facts in the case at bar we do not feel the court erred in ruling out this testimony or that the defendant could have been prejudiced by the ruling.
 The defendant next contends there is no evidence of wilful and wanton misconduct on the part of defendant. Defendant submitted this Special Interrogatory to the jury: "Was Thomas Claude Hotz guilty of wilful and wanton misconduct prior to and at the time of the collision in question?" The jury answered yes. Defendant did not, in his post-trial motion, assign as error this finding of the jury. In Freeman v. Chicago Transit Authority, 50 Ill App2d 125, 200 NE2d 128, the answer of the jury to the interrogatory was inconsistent with the general verdict. The court, after acknowledging that the answer to the interrogatory controls over the general verdict, then stated:

"Where a finding is substantially conclusive of the fact upon which the issue of liability depended and the defendant has failed to object to the answer to the interrogatory in the motion for new trial, the reviewing court must consider the special findings to have been fully sustained by the evidence. . . This is also true where no motion has been made to set aside the special finding or where the answers have not been objected to as being against the manifest weight."

Defendant did not challenge the jury's answer to the interrogatory in the trial court and therefore the question of whether there is evidence of defendant's wilful and wanton misconduct is not before us. Forslund v. Chicago Transit Authority, 9 Ill App2d 290, 132 NE2d

801, Voigt v. Anglo-American Provision Co., 104 Ill App 423, and 202 Ill 462, 66 NE 1054.

Counsel for defendant finally contends in substance that plaintiff failed to prove freedom from contributory wilful and wanton misconduct. Defendant claims that the same facts cannot prove defendant guilty of such conduct and plaintiff innocent of such conduct. It must be first noted that the facts to be proved are not the same in each instance. Defendant was driving the automobile and unless we can impute his acts to plaintiff we cannot attribute to her the movement of the automobile. Defendant concedes the handling of the automobile cannot be imputed to plaintiff. It should be noted here that there is no testimony that defendant's automobile ran the stop sign. The Millers both stated they could not say if defendant's car stopped before entering the intersection. Counsel cite three cases, Willgeroth v. Maddox, 281 Ill App 480, Lane v. Bobis, 340 Ill App 10, 91 NE2d 106, and Valentine v. England, 6 Ill App2d 275, 127 NE2d 473. Each case can be distinguished on the facts from the case at bar. In the Valentine case, a guest statute case involving a train collision, the facts show "the warning lights were flashing, the bell on the train was ringing, that the horn was sounding a warning, that vehicles were stopped and waiting at the crossing, and that all in all defendant driver had been warned in some four or five ways of the approach of the train. . . ." In the Lane case, there was testimony of the decedent's acts just prior to the collision. Decedent and defendant had placed their dogs in the back seat of defendant's automobile. The dogs caused a disturbance and decedent and defendant tried to separate the dogs. Defendant lost control of the automobile and ran the car off the road. In the Willgeroth case there was testimony of the acts of the decedent just prior to the

374n

accident. These acts affirmatively showed decedent did nothing and his acts were the same as defendant's.

Through all the cases where the plaintiff has been barred from recovery, evidence that the decedent was not exercising care is present. In the case at bar, defendant suggests that the stop sign was as clear a warning to plaintiff as it was to defendant. That the lights of the approaching truck driven by Porter were as apparent to plaintiff as to defendant. However, there is no testimony that defendant did not stop for the stop sign. There is evidence that the northwest corner of this intersection was somewhat hilly. The witness Miller testified that "As you approach the stop sign and stop, I don't say you would have a clear vision to the north, no, you would have to get pretty close to the hard road before you could see to the north but not on it." Unfortunately, defendant failed to include in the abstract photographs of the intersection and the court must rely on the testimony of witnesses, which testimony leads to the conclusion that visibility, while not completely, was at least partially obstructed. In addition it must be remembered that plaintiff was seated on the right and Porter's truck came from the left.

 "Where the direct testimony of due care by an eyewitness is not available, due care may be inferred from a consideration of all of the circumstances and from evidence that the deceased was sober, industrious, careful and of good habits." 16 ILP 33, Sec 29, Death; Illinois Central R. Co. v. Cozby, 69 Ill App 256, Karlock v. New York Cent. R. Co., 333 Ill App 655, 78 NE2d 123, National Bank of Mattoon v. Hanley, 20 Ill App2d 191, 155 NE2d 319. "In the absence of direct and positive testimony on the subject, the fact that . . . (decedent) was not negligent could be proved by reasonable inferences from his habits and

the circumstances surrounding him as shown by the evidence. It was a question for the jury to decide . . ." Illinois Cent. R. Co. v. Cozby, supra. In National Bank of Mattoon v. Hanley, supra, the court held that every presumption will be indulged in, in favor of human instinct of self-preservation and avoidance of danger.

■ The question of plaintiff's freedom of contributory wilful and wanton misconduct was a jury question. Considering all the facts and circumstances, we cannot upset this decision of the jury.

Counsel vigorously contend that the cumulation of all the court's rulings resulted in an unfair trial. By this opinion we have held that the lower court did not err in any of its rulings and we are not prepared to say that the accumulation of charges of errors add up to reversible error. In short, it is the opinion of this court that the defendant has failed to establish he did not receive a fair trial.

For the reasons stated herein, the decision of the Circuit Court is affirmed.

Affirmed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.