MICHAEL ZINDRICK, Plaintiff-Appellant, v. RICHARD DRAKE, Defendant-Appellee.

Second District   No. 77-577

Opinion filed August 16, 1979.

John Bernard Cashion, of Chicago, for appellant.

James J. Hermann, Jr., of Hermann & Hall, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff, Michael Zindrick, and defendant, Albert Drake, were the drivers of automobiles involved in a head-on collision on Illinois Route 59 in the early morning of January 26, 1974. Zindrick, Drake and two passengers in the Zindrick car were injured and a third passenger in the Zindrick car was killed. Zindrick, his two surviving passengers and the estate of the third passenger sued Drake. The jury returned a verdict finding for defendant Drake against all plaintiffs and signed a special interrogatory finding plaintiff Zindrick guilty of contributory negligence.

The major issue in the case was concerned with which auto, Zindrick's or Drake's, was all or partly on the wrong side of the road when the accident occurred. Zindrick testified that Drake's car had swerved into his (Zindrick's) lane. Because of injuries suffered in the accident, Drake had no recollection of the incident at all. Zindrick's two passengers still alive were asleep at the time of the accident and therefore could not testify as to who was at fault. The driver of a third auto which struck the Drake car after the accident was also unable to offer direct evidence on where the accident occurred. Dempsey Leith, a Lake County deputy sheriff, arrived on the scene 26 minutes after the accident, after several

other police and emergency vehicles had done so, to see if he could determine the point of collision and how the accident occurred. He testified that he had found the automotive debris caused by the accident only in the northbound lane. This was the direction in which defendant Drake was driving at the time of the accident.

Only plaintiff Zindrick has appealed. He does not contend that the verdict was against the manifest weight of the evidence but raises six issues relating to the conduct of defense counsel and evidentiary rulings by the trial court.

First, Zindrick contends that the defense counsel's references to the ad damnum clauses in plaintiffs' pleadings constitute prejudicial error. In his opening statement defense counsel stated his client was "being sued for about $600,000, I believe." An objection was made and sustained to this comment and the jury was instructed to disregard it. A motion for mistrial was made at the same time but was denied. Subsequently, the three surviving plaintiffs were all questioned by defense counsel as to the amount of the ad damnum in their respective complaints and the attorney for the estate of the non-surviving passenger announced the amount in his ad damnum in open court. Defense counsel also commented upon the ad damnums in his closing argument when he remarked that he felt entitled to lose his temper when his client was "sued for $850,000 and when people asked the jury for $420,000."

Zindrick contends that this series of events represents an improper defense strategy which severely prejudiced the jury. He points to the general rule that pleadings are usually not admissible unless they are admissions. Defendant Drake contends that the ad damnum clause of a pleading may be admissible against the pleader on the issue of his credibility and cites the following language of the court in *Grimm v. Carallis* (1968), 99 Ill. App. 2d 404, 407, 241 N.E.2d 637, 639:

> "It has become common practice in personal injury suits to exaggerate the extent of injuries and to pray for damages grossly in excess of any that might reasonably have been incurred. The fact that the practice is common does not however make it proper. Such statements when controverted by the evidence may be considered by the jury as affecting the plaintiff's credibility."

■■ We think the rule expressed by *Grimm* is a good one. Although it may well be modern practice to pull a damage figure out of a hat for purposes of the ad damnum, a complaint is still supposed to set forth allegations believed to be true. If, due to investigation and discovery, plaintiff later finds out that his good faith estimate of damages was too high, he can and should amend his complaint to reflect a lower total. The questioning of the plaintiffs and the comments in closing argument were clearly proper under *Grimm*, but counsel's comments in his opening

statement were not. One cannot put the credibility of a witness into issue before that witness has in fact testified, even if one is planning to subsequently call that witness. However, the trial court properly sustained the objection to the comments about the ad damnum in the opening argument and the jury was instructed to disregard such remarks. This action was sufficient, particularly in light of the fact that the amounts were properly introduced later.

■ The second issue raised by Zindrick relates to testimony by a neurosurgeon that Drake was unable to remember the accident because it had left him with brain damage and a significant loss of memory. Zindrick contends that the neurosurgeon should not have been allowed to testify because details of Drake's brain damage were more prejudicial than probative, particularly since plaintiffs were willing to stipulate or admit that whatever injuries Drake sustained in the accident were the cause of his lack of memory. The trial court was clearly correct as to the question of a stipulation. The basis of any stipulation is a voluntary agreement between the parties, each party having the right to choose not to enter into such an agreement. Admissions, on the other hand, while not requiring any formal agreement by the opposing party, go only to one's own conduct. One can admit liability in pleadings, but one cannot admit, at least in the context of judicial admissions, what the opposing party's witness will testify to.

■ As to the prejudice versus the probative value of the neurosurgeon's testimony, this is a question of the admission of evidence and thus was one for the normal discretion of the trial court. It is the general rule in this country that:

> "* * * evidence which will only serve to prejudice the minds of the jury is properly excluded. In weighing the tendency of offered evidence to prove an issue in dispute against its tendency to produce passion and prejudice out of proportion to its probative value, the matter is largely within the sound discretion of the trial court." Hunter, Trial Handbook for Illinois Lawyers §33:12 (4th ed. 1972), citing 29 Am. Jur. 2d *Evidence* §260(_____).

We find no abuse of discretion in the trial court's finding that the testimony of the neurosurgeon was not improperly prejudicial as it was probative on the question of why Drake could not remember and was not overly long, detailed, gruesome or otherwise inflammatory.

■ The third issue raised relates to the testimony of deputy sheriff Leith, Zindrick contending it was error to allow Leith to testify to the location of the accident debris. This contention is based on the rule that:

> "Testimony based on an inspection after the event in question is not competent unless evidence is also introduced to show that the conditions inspected had remained unchanged in the interim."

(*La Salle National Bank v. Feldman* (1966), 78 Ill. App. 2d 363, 372, 223 N.E.2d 180, 185.)

While this is a correct statement of the law, it is also true that an officer can testify to physical facts he observed, provided that he reached the scene shortly after the occurrence. (*Kassela v. Stonitsch* (1978), 57 Ill. App. 3d 817, 373 N.E.2d 608.) In other words, a police officer cannot reconstruct an accident from observations at a much later time but can describe what he observed immediately after the accident.

■ At issue is when an observation is so far after an accident as to place the burden of showing similar conditions on the party wishing to introduce the observation. We hold then that when, as here, the observing officer arrived within a half hour of the accident, and where there was no evidence introduced that any of the evidence had been altered, there is no need to lay such a foundation. Thus, the admission of the testimony was proper.

The fourth issue raised deals with a statement made by the plaintiff Zindrick after the accident, alleging that the defendant had swerved into Zindrick's lane, which was excluded by the trial court. He contends that the statement should have been admitted under the spontaneous declaration exception to the hearsay rule.

Zindrick was rendered unconscious by the accident. When he awoke on a stretcher in the road he was questioned by one of the officers about the accident as follows:

"Q: What did he say to you at that time?

A: He asked me if I was Mike Zindrick. I said, yes, I was.

He asked me if I was the driver of one of these vehicles. I said yes I was.

He asked me if I was drinking that evening. I said no. Well, a couple of swigs to wash down some potato chips, etc. He asked me what had happened, and I told him that this fellow came into our lane and hit us head-on."

■ Three factors are necessary to bring a statement within the spontaneous declaration exception to the hearsay rule. (1) An occurrence sufficiently startling to produce a spontaneous and unreflecting statement. (2) Absence of time to fabricate. (3) The statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) The question is whether there was a lack of time sufficient to allow an opportunity for reflection and invention, as the declaration must be a natural and spontaneous utterance that is so closely connected with the transaction in question as to be, in effect, a part of it, without opportunity for premeditation or design. (*Boyer Chemical Laboratory Co. v. Industrial Com.* (1937), 366 Ill. 635, 10 N.E.2d 389.) Each case must be decided on its own facts and the trial court is clothed

with a reasonable degree of latitude. *Turnbull v. Porter* (1964), 55 Ill. App. 2d 374, 206 N.E.2d 97.

■■ In the instant case the trial court's ruling that the statement was not spontaneous was not so incorrect as to constitute error. Zindrick was asked several questions before giving the statement that the defendant had swerved into his lane; there was opportunity for reflection and invention. In such circumstances we will not reverse the trial court's ruling excluding the statement.

Zindrick's fifth contention is that the trial court improperly limited his attempts to impeach Deputy Leith's testimony via prior inconsistent statements. At trial Leith testified that he had found radiator runoff in the northbound lane and traced it to where the Zindrick car had come to rest in the southbound lane. Attorneys for plaintiffs attempted to impeach Leith with two statements from his pretrial deposition. The following part of the deposition was admitted into evidence at the trial during Leith's testimony.

> "Q: Now the radiator run-off that you talk about appeared in the form of a liquid on the pavement?
> A: Yes.
> Q: Was it in only one particular place on the pavement?
> A: It was leaking from, if my memory serves me correctly, I can only visualize it in the northbound lanes. It possibly went in the southbound lane to where Unit 1, 2 came to. I really can't recall."

The following part of the deposition, however, was not admitted on the grounds that it was cumulative to the first impeachment attempt.

> "Q: Was there anything in and of itself about the radiator run-off which you said that you did not trace back necessarily to one of the three vehicles which led you at the time you made that investigation to determine that it was from one vehicle or another?
> A: I cannot remember if I traced it back or not. But I cannot remember. I did not determine exactly from what car the radiator run-off came from."

■■ Zindrick argues that the witness can be impeached a second time on the same point if in fact he makes two separate, inconsistent statements. We are not convinced that the trial court erred as it is not clear whether these two impeaching questions are merely cumulative. However, even if characterized as error, the exclusion of the second question was clearly harmless. It did not involve either a clear contradiction by the witness or a critical point of the evidence; the impact of Officer Leith's testimony was the same whether he traced the antifreeze or not. The objective of a reviewing court is not to determine whether the record is totally free from error but whether any errors occurred which operated to the prejudice of

the appellant or unduly affected the outcome below. (*Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 372 N.E.2d 385.) A judgment will not be reversed for error unless it appears that it affected the verdict of the jury. (*Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.) Hence, we will not disturb the judgment because of any potential error on this issue.

Zindrick's sixth and final contention is that the trial court improperly limited his counsel's closing argument by sustaining certain objections made by defense counsel.

Zindrick's counsel attempted to reconstruct the accident in his closing argument using the final positions of the three autos and of the debris as his starting point and arguing, *inter alia*, as follows:

"Now, let's assume what they say is true, the collision was in the northbound lane. Let's adopt their methodology. It seems to me from the damage in the photographs you got to accept that the vehicles met, not on a glancing blow. And I'm talking about the first crash. Not in a glancing blow, but they really kind of locked left headlight to left headlight. And I suggest that what happened when that occurred was that there was a force that caused them in all likelihood to rotate."

Subsequently counsel also commented about the likely recoil of the autos in the accident. Defense counsel objected on the grounds that opposing counsel should not "get into accident reconstruction" because there had been no attempt to reconstruct the accident by the use of expert witnesses at trial, and the trial court agreed that Zindrick's counsel should not reconstruct the accident. Although it is not clear precisely how much plaintiff's argument was limited by this ruling. Zindrick contends that the ruling "shut off the line of argument proffered by plaintiff's counsel," which was "plaintiff's version of what happened to the vehicles immediately after the first impact" and that "to exclude such evidence was error."

■■ It is well settled in Illinois that counsel cannot state matters not in evidence but can urge all reasonable inferences and conclusions which may be properly drawn from the evidence and that wide latitude should be allowed in this area. (*E.g., Mattice v. Klawans* (1924), 312 Ill. 299, 143 N.E. 866.) At issue is whether Zindrick's counsel was asking the jury to speculate on matters not part of the evidence or merely asking them to make reasonable inferences from evidence that was in the record, namely, the final positioning of the autos and debris. We believe that he was, in fact, merely attempting to argue from physical evidence already introduced and was not speculating on matters not in evidence. Although Zindrick might have been able to bring in an accident reconstruction expert to testify as to the meaning of the positions of the automobile and of the debris, he was not under any obligation to do so. A jury of lay

persons is capable of attempting to find out what happened without such testimony. It should be noted that defendant, despite his objection, apparently felt that the position of the vehicles and debris could, by itself, convey some message to the jury, as he did not attempt to introduce either expert reconstruction testimony or eyewitness testimony as to the place of the accident. Thus, defendant now appears to be contending that the jury should be able to infer some things from post-accident positioning but that other possibilities cannot even be suggested to them. We disagree.

The closing argument Zindrick's counsel was not permitted to give, went to the heart of his case; the only objective evidence directly relating to where the accident occurred was the testimony as to the position of the cars and of the debris after the accident. Moreover, on the record this appears to be a very close case. Because the jury must be given the opportunity to hear Zindrick's counsel's argument, we hereby reverse and remand for a new trial.

Reversed and remanded.

WOODWARD and NASH, JJ., concur.