**Lawrence C. Anderson, Plaintiff-Appellant, v. Po-ray, Inc., a Corporation, Defendant-Appellee.**

**Gen. No. 48,860.**

First District, First Division.

June 10, 1963.

Leo S. Karlin, of Chicago (William J. Harte, of counsel), for appellant.

Berchem, Schwantes & Thuma, of Chicago (Michael J. Thuma and Richard Owen Young, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action brought by plaintiff, against his employer. On a stipulation of facts, in a nonjury trial, the court found that at the time and place of the injury, plaintiff was subject to the terms and provisions of the Workmen's Compensation Act of Illinois, and that his action at law for damages was therefore barred. Judgment was entered for defendant, and plaintiff appeals.

The basic question is whether the rights of plaintiff are to be determined in a common law tort action or under the Workmen's Compensation Act of Illinois.

The employer, defendant Poray, Inc., on and prior to the date of the occurrence on June 12, 1954, was engaged in the manufacture of various metal parts for television, radio and automotive manufacturers. Its plant was located in Chicago.

Plaintiff, on the date of the occurrence and for a period of six years prior thereto, was in the employ of the defendant as a salesman-engineer. His job was to call upon the engineering and purchasing departments of prospective customers and solicit their work. He ordinarily worked five days a week, Monday through Friday, but he would work on Saturday whenever it was necessary to bring his sales records up to date or to check jobs that were going through the plant, and occasionally to attend a sales meeting. He had a drawing account of $800 a month against commissions. If the commissions exceeded $800 a month, he received the additional amount.

Several months before June 12, 1954, Walter Poranski, defendant's president, called a meeting of the various salesmen-engineers, department heads, foremen, and other supervisory personnel of the company, and informed them that it would be necessary to remodel, enlarge and modernize the facilities of the company

3

in order to compete with existing business conditions. He advised them that they would benefit as the company grew and prospered. Plaintiff, as part of this staff, attended this meeting and several later meetings, where the remodeling plans were explained and discussed. At these meetings, held in the company offices, Walter Poranski asked the men, including plaintiff, to assist in the remodeling and modernization work by coming in on Saturdays and Sundays, or such spare time as they had, and by helping out in whatever there was to do.

Defendant employed some 300 persons, about 250 of whom punched a time card when they arrived and left the plant of defendant company. The balance of approximately 50 employees kept no record of their time. Plaintiff was not required to, and did not, keep any record of his time devoted to the company business or affairs.

The work of modernizing and remodeling the polishing and buffing department commenced some time prior to June 12, 1954, and plaintiff, on four or five Saturdays, assisted in various ways in the construction work, for about four or five hours each time. Before engaging in the construction work, he would do whatever he had to do in connection with his sales work.

Personnel of defendant did as much of the remodeling as they could, and defendant subcontracted on the outside such work as could not be done by its employees. The plaintiff and other employees of defendant were not compelled to assist in the remodeling work unless they wished to. Plaintiff chose when and the length of time he would give. A person was selected for each group to supervise the work. Employees of defendant who were on an hourly basis received overtime pay for such hours as they worked on either Saturday or Sunday, but employees who were

on a salary basis, like plaintiff, received no pay for such hours as they worked on Saturday or Sunday.

On Saturday, June 12, 1954, plaintiff went to defendant's place of business, arriving there about eight or nine o'clock in the morning. He first went through some accounts and then went down to start on the construction work. This was about nine or ten o'clock in the morning. No one in particular appeared to be in charge. While working on a scaffold, passing steel rods to the second floor, he felt the platform tip, and he fell to the floor and was injured. A pin attached to the pipe by means of a short chain, which held the fitted pipes in place in the scaffold, had worked loose or fallen from the piping, causing the scaffold and platform to drop down or collapse on one corner.

The stipulated medical testimony indicates plaintiff suffered a comminuted fracture of the upper end of the tibia entering the knee joint and had a definite permanent lack of flexion.

The trial court made four specific findings as to the time and place of the injury: (1) that the relationship between plaintiff and defendant "was that of employer and employee"; (2) that plaintiff "was engaged in the usual course of the trade, business and occupation of the defendant"; (3) that defendant "was operating and conducting its business under and pursuant to the provisions of the Workmen's Compensation Act of Illinois"; and (4) "that the claim of the plaintiff comes within, and is subject to, the terms and provisions of the Workmen's Compensation Act of Illinois." Plaintiff appeals from the findings of the trial court and the judgment order in favor of defendant.

It is plaintiff's theory that at the time and place alleged in the complaint, his relationship was not that of employer and employee; that he was not working under a contract of hire with appellee; that he was

5

not engaged in the usual course of the trade, business and occupation of the appellee; that at best, he was a volunteer with respect to the work he was doing; and that therefore his common law remedy is not vitiated by the terms and provisions of the Workmen's Compensation Act of Illinois.

Chapter 48, section 138.1(b) of the Illinois Revised Statutes, 1961, defines the term "employee" as it is used in the Workmen's Compensation Act of Illinois. The portion of subsection 2 that is relevant to the instant issues is the following:

> "2. Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, and including aliens, and minors who, for the purpose of this Act shall be considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees, but not including any person who is not engaged in the usual course of the trade, business, profession or occupation of his employer."

At the outset, plaintiff states that the statute has two fundamental requirements: (1) that the person be under a contract of hire; and (2) that he be engaged in the usual course of his employer's business at the time of injury; and the absence of either requirement "at the time of the injury carries the employee beyond the scope of the Workmen's Compensation Act." We agree.

The relationship of employer and employee is a contractual relationship and "is a product of mutual assent, that is, of a meeting of minds expressed by some offer on the part of one to employ or to work for the other and an acceptance on the part of the other,"

6

and ". . . there can be no employer and employee relationship, and no liability for compensation under the act, in the absence of a contract of hire, express or implied." Crepps v. Industrial Commission, 402 Ill 606, 614, 615, 85 NE2d 5 (1949).

█ Plaintiff initially contends that he was not under any contract of hire, express or implied, oral or written, at the time and place of his injury. He argues that his position "was analogous to one gratuitously assisting his neighbor in building a fence or painting his house with no expectation of a quid pro quo with the exception probably of good fellowship between neighbors."

We have examined and considered the cases cited by plaintiff to support this contention, which, in addition to Crepps v. Industrial Commission, include Athletic Ass'n of the University of Illinois v. Industrial Commission, 384 Ill 208, 51 NE2d 157 (1943); Todd School for Boys v. Industrial Commission, 412 Ill 453, 107 NE2d 745 (1952); Marion Water Co. v. Industrial Commission, 368 Ill 350, 14 NE2d 236 (1938); Kijowski v. Times Pub. Co., 372 Ill 311, 23 NE2d 703 (1939).

In the Crepps case, Crepps, the claimant, an electrician broke his leg while installing some light fixtures in the real estate office of James H. Martin. Crepps had been sent to install the fixtures by the dealer who sold them to Martin. The evidence showed that Martin did not hire, control or pay Crepps. The Supreme Court affirmed the finding of the commission that the relationship of employer and employee did not exist.

In the Athletic Association case, the claimant was a student at the University of Illinois. He was granted an award against the Athletic Association because of injuries received by him while participating in an entertainment sponsored by the Association. In reversing the award, the Supreme Court said (p 216):

7

"We have held the Workmen's Compensation Act will be liberally construed to give effect to its purpose, but a strained construction to include an occupation or employment not fairly within the act cannot be supported. . . . To hold defendant in error was an employee under the circumstances shown in this case would give an interpretation to the term 'employee' not embraced in the Workmen's Compensation Act, as contemplated by the General Assembly. It would make organizations and voluntary associations liable for accidental injuries for participations by its memberships in social or other activities, without any intention upon the part of either to be regarded as an employee under a contract of hire."

In the Todd School case, a student at the Todd School was seriously injured while riding in a truck owned by the school. The student was in charge of younger students on a sailing excursion to a lake, about four miles from the school. There was evidence that part of the tuition of the student was made up by physical tasks in and around the school, under the supervision of the school. In reversing an award for the student, the Supreme Court said (p 456):

"The fact that the work of the students was directed by faculty members and resulted in benefits to the school does not in itself create a relation of employer and employee."

In the Marion Water Company case, the claimant was living on a small tract of land owned by the Marion Water Company. He broke his leg while mowing grass on the property. He testified he lived in the house under an agreement with the superintendent of the water company that he would keep the place cleaned up, take care of it, and keep people from

8

swimming in the pond. He was never on the payroll of the company, nor was it contended that he was subject to any orders from its manager, except suggestions on cleaning things up. In reversing an award, the Supreme Court said (p 352):

> "There is nothing in the record to show that the work he claims to have been doing was in any way incidental to or connected with the 'usual course of the trade, business, profession or occupation' of that company."

In the Kijowski case, claimant was employed by a truck driver of a Chicago newspaper to assist him in the distribution of newspapers. The truck driver paid claimant $3 a week and furnished him one meal a day. He had been working for ten days, when he was injured while riding in one of the newspaper trucks. In a tort action against it, the newspaper defended on the ground that the remedy for claimant's injuries was under the Workmen's Compensation Act. In affirming a tort action judgment, the Supreme Court said (p 316):

> "It (the newspaper) knew nothing, presumably, about the particular boy, Kijowski, had nothing to do with his selection, furnished him no living quarters and paid him nothing. It exercised no control or direction of his work."

We do not believe that the underlying factual situations in these cases are sufficiently similar to the instant case to be determinative here. As was said in the Crepps case (p 614):

> "This court recognizes that it is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee. . . . Ordinarily no single

9

feature of the relation is determinative but all must be considered together and each case must depend upon its own facts."

The stipulated facts show that the invitation to plaintiff to participate in the remodeling project was extended to him only because he was an employee of defendant and while he was under a contract of hire. He was on the defendant's premises, at the time and place of injury, engaged in company activities which produced his injuries. He was there solely because of an employer-employee relationship. The fact that the injuries of plaintiff occurred while he was not doing his usual work, outside of his usual hours of employment, does not, for the purposes of the Workmen's Compensation Act, take him outside the employer-employee relationship. As to not doing his usual work at the time of injury, see Franklin Coal & Coke Co. v. Industrial Commission, 296 Ill 329, 129 NE 811 (1921); Sunnyside Coal Co. v. Industrial Commission, 291 Ill 523, 126 NE 196 (1920); Chicago, Wilmington & Franklin Coal Co. v. Industrial Commission, 303 Ill 540, 135 NE 784 (1922). As to working outside of his usual hours of employment, see Mueller Const. Co. v. Industrial Board, 283 Ill 148, 118 NE 1028 (1918); Sanborn Co., Benjamin H. v. Industrial Commission, 405 Ill 50, 89 NE2d 804 (1950).

We conclude that the trial court was correct in finding that as to the time and place of the injury, the relationship between plaintiff and defendant "was that of employer and employee." He was under a contract of hire by defendant at the time and place of his injury.

Plaintiff next contends "that the facts show unequivocally that the work he was performing was not the usual course of defendant's business," and that the act does not include "any person 'not engaged in the usual course of the trade, business, pro-

10

fession or occupation of his employer.' " Cases cited to support the contention that an employee, working in a dual capacity, must be engaged in the "usual course" of employer's business, are Phillips v. Industrial Commission, 390 Ill 335, 61 NE2d 681 (1945); Marion Water Co. v. Industrial Commission, 368 Ill 350, 14 NE2d 236 (1938); Oak Woods Cemetery Ass'n v. Industrial Commission, 327 Ill 132, 158 NE 360 (1927); Kelly v. Industrial Commission, 326 Ill 320, 157 NE 209 (1927); H. Roy Berry Co. v. Industrial Commission, 318 Ill 312, 149 NE 278 (1925).

In the Phillips case, the claimant was employed to do the janitor maintenance work at a printing shop. He was injured while trimming trees at the home of his employer. The Supreme Court reversed an award to the claimant and said (p 340):

> "We are satisfied that at the time of the accidental injury Goveia was not engaged in the usual course of trade, business or occupation of his employer and is, therefore, excluded from the provisions of the Workmen's Compensation Act."

In the Marion Water Company case, the court held that the alleged employee was not engaged in the "usual course" of the water company's business in taking care of the company's property in return for his right to live, rent free, in a company house.

In the Oak Woods Cemetery case, the claimant was hired by the Cemetery Association to direct traffic on Memorial Day. He had done this on three previous Memorial Days and was paid $5 a day. In denying his claim, the Supreme Court said:

> "Ready was not a regular employee of the association but was hired for only a day or two to direct traffic at the cemetery gate. Such employment or work was not a part of the usual or ordinary cemetery or greenhouse business. The

11

work he was to perform was merely incidental, casual and temporary in character."

In the Berry Co. case, the company was engaged in the business of subdividing and selling real estate for certain owners. While preparing a farm for subdivision, a carpenter was employed to tear down an old barn. He was authorized to hire any help needed. The claimant was so hired and fell from the roof of the barn. The Supreme Court said (p 315):

> "Tearing down the barn in question was not a part of ordinary subdivision work. . . . Brooks was hired to assist in the removal of a barn. His employment was temporary and the work he performed was outside of the usual or regular course of his employer's business."

In the Kelly case, the Kellys conducted a blacksmith shop and garage, and also a retail implement business. In connection with the implement business, they had a truck which was used to make deliveries to customers. They generally refused to do hauling. At the request of a local cemetery, and largely for an accommodation, the Kellys used the truck, at cost, to haul and spread crushed stone from five railroad cars to the cemetery to improve its roads. The claimant was hired to assist in shoveling the stone. He was injured when a cable on the truck broke. The court said (p 324):

> "The work he (claimant) was hired to perform and did perform was outside of the usual or regular course of his employer's businesses. His employment was a mere occasional and incidental contract made for a particular purpose."

From the above cases and the stipulated fact that plaintiff was "a salesman-engineer whose job was to call upon the engineering and purchasing depart-

12

ments of prospective customers, and solicit their work," it is argued that plaintiff is within "the usual course of business" exception to section 138.1(b). We do not agree.

In all of the foregoing cases, the claimant was injured while performing work which was "incidental, casual and temporary in nature" and not part of the "usual or ordinary" business of the employer. The instant plaintiff, a full time employee for some time, was injured while in the premises where defendant carried on its usual manufacturing operations, which were an indispensable part of its trade and business. The modernization work was necessary to compete with existing business conditions. The remodeling, enlargement and modernization of the facilities of defendant's plant were for use in carrying on "the trade, business, profession or occupation of his employer." There was nothing casual, incidental or temporary in the nature of the improvements. The work being done was seriously needed in order that the employer might continue with "its main business" of manufacturing.

In Central Illinois Light Co. v. Industrial Comm., 359 Ill 430, 194 NE 530 (1935), claimant was employed to assist in moving a boiler from a railroad station to the employer's steam plant. In the course of moving the boiler, a cable broke, and claimant was injured. The Supreme Court said (p 435):

> "In the case before us the plaintiff in error needs and uses boilers to generate steam and to heat the water which it furnishes to its customers. Preparing to install a boiler by moving it from the railroad station to its plant was not a matter of daily occurrence in its business, but that does not prevent its being a part of its usual and customary business. The employment of Milledge [the claimant] was in the usual course of its business."

13

In Allen v. American Milling Co., 209 Ill App 73 (1918), plaintiff was a carpenter and millwright employed by defendant to work on an addition to defendant's factory. He was injured while thus working and brought an action at law for damages. In holding that plaintiff's common law action was barred, and that his claim lay within the Workmen's Compensation Act because he had accepted the provisions of the Act, the court said (p 76):

> "We also are of the opinion that the erection and equipment of an addition to appellant's [employer's] plant was within its trade and business. True, appellant's main business was the manufacture of certain products, but we conceive that erecting its plant or an addition to its plant is necessarily a part of the business."

Although the remodeling of defendant's plant "was not a matter of daily occurrence in its business," it did not "prevent its being a part of its usual and customary business." We conclude that the claim of plaintiff is not within the "usual course of business" exception to section 138.1(b).

■ ■ Finally, plaintiff contends that he "was a volunteer at the time and place of his injury and was therefore not within the scope of the Workmen's Compensation Act." We agree with plaintiff that, generally, volunteers have been excluded from the scope of the Workmen's Compensation Act. If a workman incurs an injury due to a risk not incident to his employment, but through doing an act of his own choosing outside any reasonable exercise of employment, such injury does not arise out of his employment. (Northwestern Yeast Co. v. Industrial Commission, 378 Ill 195, 37 NE2d 806 (1941).) The employer is not liable where the employee voluntarily exposes himself to a danger which is not one arising from his

14

employment. Peoples Gas Light & Coke Co. v. Industrial Commission, 405 Ill 73, 77, 89 NE2d 808 (1950).

In the light of the above rule, plaintiff argues that he was "one of a group who were asked to do the remodeling work on his spare time; he was not compelled to work and could do it or not do it at his own volition; he never received a nickel for the work, nor was he promised compensation." In substance, this is a fair statement, but we do not think it sufficient to place plaintiff within the prevalent definition of a "volunteer" under the Workmen's Compensation Act. As was said in Kensington Steel Corp. v. Industrial Commission, 385 Ill 504, 513, 53 NE2d 395 (1944): A volunteer "is one who introduces himself into matters which do not concern him and undertakes to do something which he is not bound to do or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency."

In working on the modernization of the plant, plaintiff was not acting on his own initiative but because of the invitation of defendant's president. The invitation was extended to him only because he was an employee of the defendant corporation, for modernization work which was being done "in order to compete with existing business conditions," and from which "they (employees) would benefit, as the company grew and prospered."

We believe the factual situation here fits well into the reasoning in Jewel Tea Co. v. Industrial Commission, 6 Ill2d 304, 128 NE2d 699 (1955), where claimant was injured while playing baseball on a company team. In defending against the claim for compensation, the employer urged that playing baseball was outside the course of claimant's employment, because it was voluntary, after working hours, and off the employer's premises. The Supreme Court held

15

that those facts did not remove the playing of base-ball from the course of claimant's employment and said (p 315):

> "Admittedly the employee would not lose his job for refusal to be on the team; however, he might be concerned about his acceptance in the company, particularly with the district manager, if he rejected the invitation to play on the district manager's team. Thus, although plaintiff was not hired to play softball, it is not an unreasonable inference that participation with the 'Jeffrie's Gems' could legitimately be regarded as an incident of plaintiff's employment."

We hold that plaintiff's participation in the remodeling of defendant's plant was as an employee of defendant and was an incident of his employment. He was not a volunteer at the time and place of his injury.

We conclude that the four specific findings made by the trial court are correct and, therefore, the judgment order appealed from is affirmed.

Affirmed.

BURMAN, PJ and ENGLISH, J, concur.