(No. 44967.-

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Joyce Brewer, Appellant.)

*Opinion filed November 30, 1972.*

LEWIS P. GAINES, of Chicago, for appellant.

JAMES W. COFFEY, of Chicago (JAMES E. RILEY, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded workmen's compensation benefits to the claimant, Joyce Brewer, for injuries she sustained in a fall at the Nobel School in Chicago. The award was affirmed by the Industrial Commission but was reversed on review by the circuit court of Cook County. The claimant appeals from the order of reversal.

In September of 1968 the claimant started her second year at DePaul University in a course leading to a Bachelor of Science degree in elementary education. At the suggestion of her academic counselor at DePaul, she made application to do volunteer work in the public schools in the "Volunteers in the Chicago Public Schools" program sponsored by the appellant, Board of Education of Chicago. The purpose of the program was to encourage citizens in various walks of life to donate their time and abilities to the public schools so that teachers might have more time to spend with their students. Volunteers received no pay and were not otherwise compensated in any manner.

In her application, which was entitled "Volunteers in the Chicago Public Schools - An Opportunity to Serve in the Chicago Public School of Your Choice", the claimant chose the Nobel School and selected a number of types of activities which she preferred to do, all of which included assisting teachers and staff in various ways. During the course of an interview with the director of the volunteer program she discussed her reasons for wanting to be a

teacher's aide, explained what talents she had to give to the program, indicated what days and hours she would be willing to work and expressed her desire to become a teacher upon completion of her schooling at DePaul in December of 1970. She also indicated that she would be willing to give 100 hours of her time to the program in the hope that at the end of that period she would be found acceptable to the Board of Education for future employment as a teacher.

Her application was approved, and shortly thereafter she commenced her volunteer work after her classes were over at DePaul, working from 1:00 to 3:15 P.M. on Tuesdays and Thursdays at the Nobel School. Upon arriving at the school each day, she reported to the principal, who told her where she was to go and what she was to do that day. On days that she could not come in, she phoned the office to let them know she would not be there. She testified that during the period of approximately four months during which she participated in the program, her activities at the school varied widely. They included assisting teachers in the classroom, teaching English to foreign students, acting as a substitute teacher at times when the teachers were not present, supervising playground activities, correcting homework papers, taking attendance, and escorting students to the principal's office for disciplinary reasons. She kept a notebook record of the dates, number of hours and activities which she performed each day.

On January 23, 1969, the claimant was substituting for a teacher in a third-floor classroom when she was requested by the principal to report to the kindergarten room located on the first floor. While enroute down a flight of stairs, she slipped on a piece of paper and fell down the stairway, fracturing her left ankle. Complications set in necessitating surgery and hospitalization on four different occasions. The extent of her injury is not disputed.

After her injury, the claimant did no further volunteer work at the Nobel School. However, she did return to the school to obtain the signature of the assistant principal on a form entitled "School of Education - DePaul University - 100 Hours Requirement" which read as follows: "This is to certify that Joyce B. Brewer has participated in the activities indicated below for a period of one-hundred hours (100 hours) at Nobel Elementary School under our supervision . . . Miss Brewer worked with a group of foreign students as a tutor and remedial assistant on a regular basis. In addition she supervised our recess periods in the playground. During her Christmas vacation she worked with eight primary grade students as a remedial tutor for reading readiness. She also acted as a substitute teacher for us. She also assisted in kindergarten play activities and supervision whenever her aid was necessary. All of her activities were performed under my supervision and approval, and she was responsible to me in the performance of all of her tasks as a public school volunteer." This document was filed among her records at DePaul.

The sole issue in dispute is whether the claimant was an employee of the Board of Education within the meaning of the Workmen's Compensation Act. In section 138.1(b)(1) of the Act, the term "employee" is defined to include persons "in the service of" a school district "under appointment or contract of hire, express or implied, oral or written." (Ill. Rev. Stat. 1969, ch. 48, par. 138.1(b)(1).) The claimant argues that she was giving 100 hours of work in return for employment as a teacher upon graduation from DePaul University and that since her talents were utilized by the Board of Education to perform some of the duties of regularly employed teachers, she should be considered as a person in the service of the school district under appointment. The Board, on the other hand, contends that the claimant performed voluntary work at the Nobel School without compensation or any assurance

of future employment and that the necessary elements of an employer-employee relationship were lacking.

The underlying purpose of workmen's compensation legislation in this and other States is to provide financial protection in various forms, including the restoration of lost wages, for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment. (*Colclasure v. Industrial Com. (1958), 14 Ill.2d 455; Lambert v. Industrial Com. (1952), 411 Ill. 593.*) Consistent with the philosophy of the legislation which assumes that a worker is gainfully employed at the time of his injury, it is generally recognized that a true employer-employee relationship does not exist in the absence of the payment or expected payment of consideration in some form by employer to employee. As a consequence, the workmen's compensation statutes throughout this country have uniformly been construed to exclude from coverage purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services. See discussion and cases cited in 1A A. Larson, Workmen's Compensation Law (1967), sec. 47.10 *et seq.*; 99 C.J.S., Workmen's Compensation, sec. 64; but see *Orphant v. St. Louis State Hospital (Mo. 1969), 441 S.W.2d 355,* in which the statute embodied contrary legislative intent.

Although our Workmen's Compensation Act should be liberally construed to give effect to its purpose, we have often stated that it should not be given a strained construction to include an occupation or employment not fairly within the Act. (*Athletic Ass'n of the University of Illinois v. Industrial Com. (1943), 384 Ill. 208; Marion Water Co. v. Industrial Com. (1938), 368 Ill. 350.*) Upon consideration of the facts and circumstances in the case before us, we have come to the conclusion that to hold that the claimant was an "employee" of the Board of Education would be to extend the scope and coverage of the Workmen's Compensation Act beyond that contem-

plated by the legislature. As between the claimant and the Board of Education, the element of consideration for her services was totally lacking. It is undisputed that her activities at the Nobel School were strictly on a voluntary basis with no expectation of any monetary compensation. With respect to her intention to give 100 hours of volunteer work, the evidence was insufficient to establish any commitment on the part of the Board of Education to hire her at some point in the future in return for such work, and there was no evidence that the giving of her time was in any manner a condition precedent to future employment. On the contrary, the evidence strongly supports the conclusion that the performance of 100 hours of volunteer work in the public schools of Chicago was a DePaul University requirement which students were expected to complete in the course of their academic training for a Bachelor of Science degree in elementary education.

It should also be noted that the relationship of an employer and employee is a product of mutual assent. (*Crepps v. Industrial Com. (1949), 402 Ill. 606.*) While there was evidence that the claimant may have performed some of the duties of a regularly employed teacher on a very limited basis, we believe it is quite evident that during the time she participated in the volunteer program she did not regard herself as an employee of the Board of Education and the Board likewise did not regard her as one of its employees. (*Todd School for Boys v. Industrial Com. (1952), 412 Ill. 453; Athletic Ass'n of the University of Illinois v. Industrial Com. (1943), 384 Ill. 208.*) Although the possibility of future employment may have been contemplated, the existence of a present employer-employee relationship was clearly not intended.

For the reasons above stated, we conclude that the Industrial Commission's decision awarding compensation to the claimant was against the manifest weight of the evidence. The judgment of the circuit court of Cook County reversing that decision must accordingly be affirmed.

*Judgment affirmed.*