BEATRICE CAMILLE MARTIN, Plaintiff-Appellee, *v.* KRALIS POULTRY CO., INC., Defendant-Appellant.

(No. 71-247;

Fifth District—June 7, 1973.

456

Paul T. Riggle, and James B. Moses, of Smith, McCollum & Riggle, of Flora, for appellant.

C. M. Jack Heap, of Olney, and Philip C. Zimmerly, of Champaign, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This case involved a common law tort action brought to recover damages for personal injuries occasioned by the alleged negligence of the defendant in maintaining the floor of a room used as an entranceway into its plant. The jury rendered a verdict for the plantiff in the sum of $75,090.52, upon which the court entered the judgment and from which this appeal is taken.

The defendant, Kralis Poultry Co., Inc., operates a poultry processing plant. The plaintiff, Beatrice Martin, was employed by the defendant on the day of her fall. Her husband, Ellis Martin, was also employed by the defendant as a superintendent. On the day of her fall the plaintiff had left the plant after work to attend a union meeting, off the company premises, to vote on whether to strike. At the end of the union meeting, the plaintiff returned to the defendant's plant at the request of her husband, to obtain a ride home. She entered the defendant's plant for the purpose of meeting her husband, when she slipped and fell in the entranceway leading into the plant. The negligence of the defendant, as alleged by the plaintiff, was in placing soap on the floor of the entranceway, in permitting the soap to remain on the floor, and in failing to warn the plaintiff of the unsafe condition of the floor. Ellis Martin, the plaintiff's husband and the defendant's plant superintendent, testified in his affidavit and on the witness stand that he had discussed the impending strike with the plant manager and told him that he could obtain the results of the union strike vote from his wife. He testified that, to obtain this information, he specifically asked his wife to return to the plant to obtain a ride home. Charles Walker, the defendant's plant manager, denied that any such conversation took place. Ellis Martin did not wait for his wife to return to the plant.

There are three issues which form the bases of this appeal: first, whether the rights of the plaintiff are to be determined in a common law tort action or under the Workmen's Compensation Act of Illinois; second, whether a statement of counsel for the plaintiff was so prejudicial

that the judgment should be reversed; and finally, whether the jury was properly instructed.

It is argued by the defendant that the plaintiff's injury arose out of her employment by the defendant, and therefore her action at law for damages was barred. The defendant cites the affidavit of Ellis Martin and his testimony at trial to the effect that the defendant employer needed and hoped to obtain information concerning the union strike vote, that the defendant employer specifically asked the plaintiff employee to return to the defendant's plant for this purpose, and that when she returned to the defendant employer's plant and was injured, she was there for its benefit and at the request of its superintendent. In light of these facts, the defendant argues that the plaintiff's injury arose out of and in the course of her employment. Therefore, her cause of action at law is barred by the Workmen's Compensation Act of Illinois.

The defendant also cites four cases in support of these contentions. In *Anderson v. Poray, Inc.* (1963), 42 Ill.App.2d 1, 191 N.E.2d 417, 421, the plaintiff a salesman engineer, was injured when he fell from a scaffold while assisting in the remodeling of his employer's plant. The court found that the plaintiff's common law tort action was barred by the Workmen's Compensation Act. However, the court also found that the invitation to participate was extended to the plaintiff only because he was an employee, he was engaged in company activities which produced his injuries, and he was there solely because of an employer-employee relationship.

In *Jewel Tea Co. v. Industrial Com.* (1955), 6 Ill.2d 304, 128 N.E.2d 699, the Illinois Supreme Court held that injuries sustained by an employee while playing softball in an inter-company league competition after working hours and off the company premises were compensable under the Workmen's Compensation Act, as arising out of and in the course of employment. However, the court found that there were subtle pressures from the company to encourage participation on the teams, such that the plaintiff and others like him felt compelled to play.

In *Sanborn Co. v. Industrial Com.* (1950), 405 Ill. 50, 89 N.E.2d 804, a secretary was asked to work on her usual day off and was directed by her employer to run an errand. Enroute to the office she was injured in an automobile accident. The court held that since she was carrying her employer's check and was acting pursuant to his direction, her injuries arose out of and in the course of employment. This was so, the court said, because the claimant was performing unusual duties, on a day which was ordinarily a holiday for her, at the express direction of her superior. 405 Ill. 55, 89 N.E.2d 806.

Lastly the defendant cites *Swift & Co. v. Industrial Com.* (1932), 350

Ill. 413, 183 N.E. 476. In this case a route salesman was killed in an automobile accident while he was carrying out the employer's special directions in attempting to collect a delinquent account. The court found that because the deceased was performing the duty imposed upon him by his contract of employment at the time of the accident, he was acting out of and in the course of his employment.

All of these cases cited by the defendant can easily be distinguished from the case at bar. The last three citations are of cases where the employee asserted employment, brought his case under the Workmen's Compensation Act, and had that decision sustained on review. In the case at bar, the plaintiff did not assert employment at the time of her injury and did not bring an action under Workmen's Compensation. On the contrary, she brought a common law tort action. In each of the cases cited by the defendant, the plaintiff was either engaged in company activities which produced his injuries, or was in a position to be injured because of an employer-employee relationship and because of subtle pressures to be there, or was acting pursuant to specific directions by the employer to perform an unusual task. However, none of these situations existed in the case before us. Other than the testimony of the plaintiff's husband, the record indicates that the plaintiff returned to the defendant's plant at the request of her husband, solely to obtain a ride home. From the viewpoint of the plaintiff, she was merely complying with her husband's request arising out of their relationship as husband and wife. From her point of view, she was not engaged in any company activities, she was in the plant for personal reasons, she was not acting under any pressure and she was not performing any unusual task for her employer. She was merely meeting her husband so that they might ride home together.

An analysis of the applicable Illinois law will further clarify this discussion. The pertinent Illinois statute, Ill. Rev. Stat., ch. 48, §138.5 (1967), provides:

> "No common law or statutory right to recover damages from the employer * * * for injury * * * sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this Act."

Section 138.1(b)2 further provides:

> "The term 'employee' as used in this Act shall be construed to mean: * * *
>
> Every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person who is not engaged in the usual course of the

trade, business, profession or occupation of his employer unless he is so engaged at the lawful direction or instruction of his employer."

■■ From a reading of these excerpts from the Illinois Statutes, it is impossible to lay down a single all-encompassing rule by which the status of a person performing a service for another can definitely be fixed as an employee, and ordinarily no single feature of the relationship is determinative, but all must be considered together and each case must depend on its facts. (*Anderson v. Poray, Inc.* (1963), 42 Ill.App.2d 1, 191 N.E.2d 417; *Village of Creve Coeur v. Industrial Com.* (1965) 32 Ill.2d 430, 206 N.E.2d 706.) The cases have generally held, however, that there necessarily must be a contract of hire, express or implied. To be covered a person must be under a contract of hire and be engaged in the usual course of his employer's business at the time of injury and the absence of either requirement at the time of the injury places the employee beyond the scope of the Workmen's Compnsation Act. *Anderson v. Poray, Inc.* (1963), 42 Ill.App.2d 1, 191 N.E.2d 417.

■■■ The purpose of the Illinois Workmen's Compensation Act is to protect workmen and compensate them for injuries received while performing any duty necessary to be performed in the course of their employment or incident to it. (*Beverly Country Club v. Massachusetts Bonding & Insurance Co.* (1932), 268 Ill.App. 380.) The Workmen's Compensation Act does not apply to every accidental injury happening to an employee, but the injury contemplated by the Act must originate in some risk of the employment. (*Klug v. Industrial Com.* (1943), 381 Ill. 608, 46 N.E.2d 38; *Schwartz v. Industrial Com.* (1942), 379 Ill. 139, 39 N.E.2d 980.) To be compensable under the Workmen's Compensation Act the injury must arise both "out of" and "in the course of" being used in the conjunctive, they must coexist, neither alone being sufficient. Proof of one without proof of the other will not sustain an award. (*Ceisel v. Industrial Com.* (1948), 400 Ill. 574, 81 N.E.2d 506.) "In the course of employment" relates to the time, place and circumstances of the injury, while "arising out of the employment" refers to the requisite causal connection between the injury and the employment. *Rydson Products Co. v. Industrial Com.* (1966), 34 Ill.2d 326, 215 N.E.2d 261; *Christian v. Chicago & Illinois Midland Ry. Co.* (1952), 412 Ill. 171, 105 N.E.2d 741.

■■■ From these cases it is clear that there must be a causal connection between the conditions existing on the employer's premises and the injury to the employee, and the accident must have had its origin in some risk connected with or incidental to the employment. A risk is incidental to the employment only when it belongs to or is connected with what an employee has to do in fulfilling his contract of employ-

ment. (*Chicago Hardware Foundry Co. v. Industrial Com.* (1946), 393 Ill. 294, 65 N.E.2d 778; *Antoszkiewicz v. Industrial Com.* (1943), 382 Ill. 149, 47 N.E.2d 74.) Furthermore, an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the worker would have been equally exposed apart from it, does not "arise out of" the employment, unless the character of the employment intensifies the risk. *J. I. Case Co. v. Industrial Com.* (1967), 36 Ill.2d 386, 223, N.E.2d 847.

■■  The record in the present case shows that the plaintiff was employed as an inspector and that on the day of her injuries she had finished her work and clocked out two hours before she sustained her injury. And not only is there no evidence of an employment relationship, there is no evidence of a causal connection between any such employment and her injury. Since she had clocked out, her injury did not occur within the time of her employment. There is no evidence that the risk encountered by the plaintiff was incidental to her employment as an inspector or that her injury resulted from a hazard to which she would not have equally been exposed apart from it. The hazardous condition of the floor is not in dispute in this case, and the risk which it posed was not any greater to the plaintiff by virtue of her return to the plant after hours, than that which it posed to any other person also entering the plant through that particular entranceway on that day. The defendants make much of the fact that the actions of the plaintiff were beneficial to the employer, that they were performed at the direction of the employer, and that the accident occurred on the employer's premises. Again the case law has clarified these three points. As was mentioned above, before an injury can be said to arise out of the employment, the risk thereof must be one peculiar to the work. It does not follow, therefore, that simply because an activity is beneficial to an employer it is also incidental to the employment. (*Spees v. Stapleton* (1969), 111 Ill.App.2d 254, 250 N.E.2d 181.) Furthermore, the facts in the case before us are in dispute concerning the extent to which the actions of the plaintiff were to benefit the employer-defendant, if any. And it must be mentioned again that no single factor is determinative of the employment relationship.

■■  Concerning the defendant's last assertion, that the injury occurred on the defendant employer's premises, again there is substantial evidence to the effect that the plaintiff was on the defendant's premises solely for the purpose of obtaining a ride home from her husband, something for her own personal benefit. Cases have held that even though an accident happens on the employer's premises, if it occurs while the employee is doing something there for his own personal benefit, it does not arise out

of his employment. *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 4 N.E.2d 823; *Board of Education v. Industrial Com.* (1926), 321 Ill. 23, 151 N.E. 499.

In short, two hours after the normal work day had ended, the evidence supports the conclusion that there was no lawful direction by the employer that she perform an unusual task and no benefit that her presence on the employer's premises could render the company. To substantiate and lend support to the conclusion that plaintiff's injuries did not arise out of and in the course of her employment, we cite the case of *Lyons v. Michigan Bldg. Co., Inc.* (1947), 331 Ill.App. 482, 72 N.E.2d 776. In that case the plaintiff was on an elevator enroute to the 14th floor on which was located a rest room and the office in which she worked, approximately twenty minutes before she was due for work, when she sustained her injury. She intended to go first to the rest room, leave her hat and coat at the office, and return to the ground floor to a public restaurant. Enroute a light fixture fell from the ceiling of the elevator, injuring her. She thereafter brought a common law tort action to recover damages against the building owner. At trial the defendant made a motion for a directed verdict alleging that at the time of the accident the plaintiff was acting "out of" and "in the course of" her employment; that, since the elevator was needed to get to and leave her employer's office, she was on her employer's premises; and that her suit was barred by the Workmen's Compensation Act. On appeal, the Appellate Court reversed the trial court's directed verdict, and held that the facts fairly tended to establish that her injury did not occur "in the course of" or "arise out of" her employment, since she was injured twenty minutes before she was due at work, while riding in the elevator for her own personal benefit.

■■■ In the final analysis it should be remembered that the existence of an employer and employee relationship is a question of fact. (*Crepps v. Industrial Com.* (1949), 402 Ill. 606, 85 N.E.2d 5; *Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 62 N.E.2d 686.) It is the function of the jury to draw ultimate conclusions as to the facts and to weigh contradictory evidence. (*Houston v. Leyden Motor Coach Co.* (1968), 102 Ill.2d 348, 243 N.E.2d 293.) In *Finley v. New York Central R.R. Co.* (1960), 19 Ill.2d 428, 167 N.E.2d 212, the court held that the conclusion of the jury should not be set aside on review, merely because different conclusions could be drawn or because the judge feels that other results are more reasonable. The only occasions where it is proper for a new trial to be granted is where a finding is contrary to the manifest weight of the evidence. In the present case there is ample evidence to support the

jury's determinations of the factual disputes, including the reasons for the plaintiff's return to the company.

The defendant next complains of a statement made by counsel for the plaintiff in the presence of the jury which is alleged to be so prejudicial as to warrant reversal. The plaintiff called a Department of Labor safety inspector as a witness and began to question him about Industrial Commission rules. Before any specific rules were mentioned, the following dialogue occurred between counsel:

> "Defendant's Counsel: May it please the Court, I think maybe we might have this out of the presence of the jury, but there is nowhere in the complaint any allegation as to any statute or directives of the Department of Safety, and this comes as a surprise at this time.
>
> Plaintiff's counsel: If the Court please, I want to contest this. It cannot come as a surprise. *The plant has been warned repeatedly about that.*"

Defendant cites the general rule that: "A judgment obtained through statements of counsel concerning inadmissible matters that are prejudicial is grounds for a reversal where the prejudice is clear, though the trial court directs the jury to disregard the statements." *Illinois Law & Practice*, vol. 3, Appeal and Error, pages 55-59. However, each of the cases cited by the defendant to support its argument involved either many instances of prejudicial statements by counsel, or the court did not direct the jury to disregard counsel's statements, or counsel made comments respecting the ability to pay, all of which can be distinguished from the case before us.

None of the cited cases is similar to the one before us. In this case plaintiff's attorney made a single ambiguous remark, early in trial, during a confusing interchange between attorneys for both sides, which may not have been heard or understood by the jury. The trial judge quickly took corrective action to instruct the jury to disregard the exchange between counsel, no other reference was made to the entire episode throughout the trial, and the record shows that the trial judge reaffirmed his decision in ruling on defendant's post-trial motion. In addition to the general rule cited by the defendant, is the rule that "Improper argument or misconduct of counsel *may* constitute ground for reversal but *only* where it is apparent or probable that the complaining party has been prejudicially affected thereby." (*Illinois Law & Practice*, vol. 3, Appeal and Error, pages 55-59.) Applicable Illinois case law has shown that misconduct by counsel may be rendered harmless error by corrective action of the court. Furthermore, the trial court is in the

unique position of hearing all the testimony, all of the arguments, and of observing the parties, their counsel, and the effect of all of this on the jury. For this reason the sound rule exists that the question of whether conduct is or is not prejudicial rests within the sound discretion of the trial court and its decision will not be disturbed unless it is clear that the court has abused its discretion. (*Johnson v. Cunningham* (1969), 104 Ill.App.2d 406, 244 N.E.2d 205.) It is, therefore, necessary to consider the trial as a whole to determine if a party has been denied his constitutional right to a fair trial by misconduct of the other side's counsel. As stated above, it is only where it appears that the trial judge has abused his discretion and that the jury has been misled by these improper remarks that a reviewing court will set aside a verdict on this ground. It does not appear from the record of this trial that the trial judge abused his discretion. On the contrary he exercised it to its fullest and fairest degree. In addition, it does not appear that the jury was misled. Therefore the judgment should not be reversed on this ground.

The third and final ground for appeal mentioned by the defendant was that the court did not properly instruct the jury. The defendant alleges initially that the court erred in failing to give its tendered instruction I.P.I. 3.01, impeachment by prior inconsistent statement. There are only two cases cited to support this position, neither of which are on point. In *Savage v. Blancett* (1964), 47 Ill.App.2d 355, 198 N.E.2d 120, the trial judge's failure to give a tendered instruction was in addition to instructions which were in fact given, but given without precision and accuracy. Combined, these formed a basis for reversible error. And in *Cassens v. Tillbert* (1938), 294 Ill.App. 168, 13 N.E.2d 644, there was no assertion that a proper instruction was refused. Instead, the instructions which were given were improperly stated, were confusing and misleading, and as a series were inconsistent.

██ The law is clear that I.P.I. 3.01 is a cautionary instruction and that the decision to give or not to give it is totally within the discretion of the trial judge. (*Schneiderman v. Interstate Transit Line* (1948), 401 Ill. 172, 81 N.E.2d 861; *Bennet v. W. M. McAllister Co.* (1926), 241 Ill.App. 502.) Furthermore, where there is no proof in the record of any inconsistency between the pretrial deposition and trial testimony, there is no necessity for this instruction. *Sola v. City of Chicago* (1967), 82 Ill.App.2d 266, 227 N.E.2d 102.

██ A review of the record in this case also shows that each instance of impeachment cited by the defendant was evidence of contradictory statements by *other* witnesses. These are not prior inconsistent statements within the usual definition. They should be statements made by the witness himself before trial, which are contrary to and inconsistent with

testimony given in trial. (*Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill.App. 84, 61 N.E.2d 290.) Without evidence of any such prior inconsistent statements, there is no need to give I.P.I. 3.01.

The defendant argues the second error in the instructions dealt with the giving of I.P.I. 34.04, mortality tables as evidence of damages. The defendant argues that the court erred in instructing the jury that it may consider the health, habits, and other activities of the plaintiff in determining life expectancy and future damages when there was no evidence of these before the jury. The three cases cited by the defendant are not on point and may be distinguished on the facts; and the language of the courts which defendant cited from these cases is quoted out of context, such that no further consideration of these cases need be made. Instead we must look to the case law dealing with this instruction and the record in this case.

■■■■ Where mortality tables are introduced into evidence, the jury should be carefully instructed as to their purposes for fixing damages and their use is prejudicial without such instructions. (*Avance v. Thompson* (1944), 387 Ill. 77, 55 N.E.2d 57.) Furthermore, it is the well established rule that the instructions will be considered as a whole and although technical errors may be found to exist therein, if the complaining party's rights have not thereby been prejudiced, such errors will not be deemed grounds for reversal. *McKinney v. Illinois Power Co.* (1960), 26 Ill.App.2d 193, 167 N.E.2d 249; *Bunton v. Illinois Central R.R. Co.* (1957), 15 Ill.App.2d 311, 146 N.E.2d 205.

■■ The record indicates that there was in fact ample evidence concerning the health, habits and activities of the plaintiff since her injury. She has lost wages and raises in pay since her accident; she had to wear a cast for two years; she was bedridden, in a wheel chair, or on crutches since the accident; she was unable to do her housework and thus was forced to hire a maid; and since the accident she has been unable to stand for more than thirty minutes at a time. And, finally, there was medical testimony as to the plaintiff's future health. Contrary to the defendant's allegation, to *exclude* that portion of I.P.I. 34.04 specifying "health, habits and activities of the plaintiff" would have been prejudicial. Therefore viewed in light of the case law and the record this instruction was proper and when taken together with the other instructions given, it substantially presented the law fairly to the jury upon the facts.

■■ The third and final error alleged to have been made in instructing the jury was the Court's Instruction No. 2, on the burden of proof, which the defendant says was a vague and senseless instruction. The instruction reads as follows:

"The Plaintiff has the burden of proving each of the following

propositions: First, that the Plaintiff before and at the time of the occurrence was using ordinary care for her own safety; Second, that the Defendant acted, or failed to act in one of the ways claimed by the Plaintiff as stated to you in these instructions and that in so acting or failing to act, the Defendant was negligent; Third, that the Plaintiff was injured; Fourth, that the negligence of the Defendant was a proximate cause of the injury to the Plaintiff.

In this case the Defendant has asserted the affirmative defense that at the time the Plaintiff sustained her alleged personal injuries she was on the premises of the Defendant, with the consent of the Defendant, solely to satisfy her own purposes, i.e., to obtain a ride to her residence.

The Defendant has the burden of proving this defense.

If you find from your consideration of all the evidence that each of the propositions required of the Plaintiff has been proved and that the Defendant's affirmative defense has not been proved then your verdict should be for the Plaintiff. If, on the other hand, you find from your consideration of all the evidence, that any one of the propositions the Plaintiff is required to prove has not been proved, or, unless Plaintiff's presence was known to Defendant, that the Defendant's affirmative defense has been proved, then your verdict should be for the Defendant."

We find the insertion of the language "unless Plaintiff's presence was known to Defendant" in the last sentence of the instruction confusing but in view of the evidence and defendant's affirmative defense do not arrive at the conclusion that the confusion was necessarily prejudicial to defendant. Their sole ground for objection at the conference on this instruction was that the phrase "unless Plaintiff's presence was known to Defendant" was added over the objection of defendant after the final argument, and defendant's argument was made on the theory that the instruction would be given without the inserted clause.

■■■■ The defendant argues at length that this was a peremptory instruction that it was vague and defective and therefore that it warrants a reversal, citing *Milford Canning Co. v. Central Ill. P. Serv. Co.* (1963), 39 Ill.App.2d 258, 188 N.E.2d 397; *Duffy v. Cortesi* (1954), 2 Ill.2d 511, 119 N.E.2d 241; *Kelly v. C. Iber & Sons, Inc.* (1958), 17 Ill. App.2d 388, 159 N.E.2d 372. This question can, however, be disposed of rather quickly. The defendant prefaces his argument with the claim that the instruction is peremptory. A peremptory instruction according to *Black's Law Dictionary* is "an instruction given by a court to a jury, which the latter must obey implicitly, as an instruction to return a ver-

dict for the defendant, or for the plaintiff, as the case may be". From a reading of Court's Instruction No. 2 it seems that it was not verdict directing, because the jury could find for the defendant if they found that any one of the propositions the plaintiff was required to prove had not been proved. Furthermore, the instruction supports a verdict for the plaintiff if certain propositions are found and it supports a verdict for the defendant if the contrary is found. This is not a peremptory instruction according to the holding in *Nazel v. Village of East Hazelcrest* (1952), 347 Ill.App 338, 106 N.E.2d 838. This case involved a personal injury and property damage action against a village, caused when the plaintiff's automobile was driven into a hole in the street caused by the collapse of a tile culvert. The defendant complained of an instruction which began "The plaintiff may recover" and ended "If the plaintiff failed to prove  *  *  *  they cannot recover", claiming it was peremptory. The reviewing court held that was not a peremptory instruction. Similarly, the instruction in the present case was not peremptory and the trial court did not err in giving it.

For the foregoing reasons, the judgment of the trial court is affirmed.

G. MORAN and JONES, JJ., concur.