WOLVERINE INSURANCE COMPANY, Plaintiff-Appellant, *v.* CLYDE JOCKISH *et al.*, Defendants-Appellees.

Third District    No. 79-431

Opinion filed April 29, 1980.

Gerald M. Hunter, of Oglesby, for appellant.

Lenn C. Goldsmith, of Boyle & Goldsmith, of Hennepin, and Randall M. Moon, of O'Hern, Wombacher, Moon & Boos, of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This appeal is from a declaratory judgment action filed in the circuit court of Putnam County, Illinois. At issue is whether the plaintiff insurance company is obligated to defend by reason of a liability policy insuring Harold L. Hood, an action brought by Clyde Jockish.

The events which give rise to the issue raised in the declaratory judgment action can be recounted beginning with the evening of December 1, 1977. On that evening, Harold Hood, doing business as Hood Trucking, received notice that a semi-truck belonging to Hood was disabled at a truck stop on Interstate 80 north of Princeton, Illinois. After being so notified, Hood phoned Clyde Jockish and solicited Jockish's assistance in retrieving the disabled truck. It was agreed that Jockish, Hood and Sheldon McNeely would drive to Princeton with a semitruck the following morning. Loaded on the semi's lowboy trailer would be a semitractor for use in pulling home the trailer attached to the disabled semitractor. In turn the disabled semitractor would be loaded on the lowboy and returned to Hood's place of business in Rushville. Hood had

previously made arrangements to secure McNeely's help and the use of a lowboy trailer borrowed from a friend, Mr. Coates, in Beardstown. No conversation took place on the evening of December 1 with regard to compensation for Jockish.

Hood and Jockish had a business relationship prior to their phone conversation of December 1. Jockish was not licensed with the I.C.C., and the lease arrangement permitted him to operate under Hood's license. According to the terms of the lease, Jockish drove his own truck and kept 75 percent of the gross receipts from the haul. All parties agreed that Jockish had no obligation to assist Hood in retrieving the disabled semitractor under the terms of this lease agreement.

On the morning of December 2, 1977, Jockish was a passenger in the semitruck driven by McNeely bound for Princeton. Hood followed in a pickup truck accompanied by Dennis Frost. Frost was accompanying Hood to Princeton with the understanding that after loading the disabled semitractor on the lowboy trailer, Hood would drive to Pontiac, Illinois, where Frost would look at and advise Hood as to the purchase of certain farm machinery.

McNeely and Jockish had just passed through the town of Putnam when they came upon a stalled vehicle in the roadway. Unable to stop, the McNeely-driven semi collided with the vehicle in front of it. Jockish sustained injuries as a result of that collision, and on August 1, 1978, he brought suit in the Putnam County Circuit Court against Hood and others to recover damages for those injuries.

Subsequently this declaratory judgment action was brought by the Wolverine Insurance Company (hereinafter Wolverine). The Wolverine complaint alleged that Wolverine insured Hood with a policy of vehicular liability insurance which expressly excluded coverage for claims payable under workmen's compensation. It further alleged that the claims of Jockish as set forth in the August 1 action were excluded from coverage as payable under workmen's compensation. Wolverine's complaint was answered by the Pekin Insurance Company (hereinafter Pekin), the party that insured Hood for claims arising under workmen's compensation. At issue in the declaratory judgment action is whether Jockish was an employee of Hood at the time of his injury and thus whether his claim falls within the ambit of workmen's compensation. This issue was submitted to the circuit court of Putnam County upon certain discovery depositions, and that court concluded that on December 2, 1977, Jockish was not an employee of Hood. Wolverine appeals that decision.

Ordinarily, the trial court's determination should not be disturbed if there is evidence in the record to support that court's decision, but if the evidence before the trial court consists of depositions, transcripts, or is documentary in nature, the appellate court is not bound by the trial

court's findings and may make an independent decision on the facts. (*Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952.) In cases like the one at bar, it is not unprecedented nor improper for the appellate court to make an original examination of the evidence. (*Inter-Insurance Exchange of Chicago Motor Club v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518.) We have made such an examination, and we reach the same conclusion as did the court below.

The Illinois Workmen's Compensation Act defines an employee as:

> "Every person in the service of another under any contract of hire, express or implied, oral or written * * *." (Ill. Rev. Stat. 1977, ch. 48, par. 138.1(b)2.)

Under the facts of the case at bar, it is clear that no express contract, either written or oral, existed between Hood and Jockish for the activities of December 2, 1977. Rather, we must determine whether in light of the facts the law will imply a contract for hire between Hood and Jockish, or alternatively, whether Jockish was a purely gratuitous worker who neither expected nor received compensation. No single facet in the relationship between the parties is determinative of this implied employee-gratuitous worker issue, but many factors must be considered and analyzed. *Village of Creve Coeur v. Industrial Com.* (1965), 32 Ill. 2d 430, 206 N.E.2d 706.

■■ In its brief before this court, Wolverine initially attempts to portray Hood's predicament with his disabled rig as an emergency situation. In so doing, Wolverine hopes to rely upon the emergency doctrine set forth in *Conveyors' Corp. of America v. Industrial Com.* (1929), 200 Wis. 512, 228 N.W. 118, and *Tipper v. Great Lakes Chemical Co.* (Fla. 1973), 281 S.2d 10. We believe the life-threatening urgency which characterizes the emergency doctrine cases is absent from the facts before us. Hood's disabled semitrailer unit was parked with some security off the highway and at a public truck stop.

Although we decline to apply the rule of emergency situations to the instant case, Wolverine nevertheless suggests other factors which tend to prove the existence of an employee-employer relationship even absent the special rule for emergencies. As an example, the record supports Wolverine's contention that Hood retained the right to control and direct the activities of Jockish, McNeely and Frost in retrieving the disabled vehicle. Further, Hood furnished most of the equipment necessary to complete the task. He did not furnish the lowboy trailer, the log chain, or the binders, although he did arrange to borrow those items from Mr. Coates and from Jockish himself. Previous decisions have found both the right of control and the furnishing of equipment to be cogent evidence when faced with a similar issue. *Village of Creve Coeur v. Industrial Com.* (1965), 32 Ill. 2d 430, 206 N.E.2d 706.

■■ In contrast, Pekin in its brief points to the absence of any

compensation, any agreement for compensation, and the entire pattern of the relationships between the parties to the December 2 venture. It is undisputed that Hood and Jockish never discussed payment or compensation for services in their phone conversation of December 1, when their agreement was reached, nor did such a discussion take place at any time subsequent to the phone conversation and before the injurious collision. The status of employee arises out of contract and cannot exist without mutual assent. (*McHugh-Brighton v. Industrial Com.* (1969), 42 Ill. 2d 52, 245 N.E.2d 480; *Anderson v. Poray, Inc.* (1963), 42 Ill. App. 2d 1, 191 N.E.2d 417; *Board of Education v. Industrial Com.* (1972), 53 Ill. 2d 167, 290 N.E.2d 247.) Jockish was not an employee unless he and Hood mutually believed that relation to exist. *Board of Education v. Industrial Com.*

The following testimony is quoted from the deposition of Hood:

"* * * we all kind of work together down there. Hell, as far as all this stuff, if somebody needed their back scratched, we scratched it, you know, and if he needed me to come over and help him, I go over and go help. Everybody—we just tried to work it like a big, happy family, you know. Whenever you do that I guess you leave yourself open to a —."

Jockish confirmed that this was the casual, neighborly nature of the agreement reached when he was questioned at a deposition:

"Q: What was going through your mind during conversation with Mr. Hood that evening and that morning as to what, if any, payment you were to receive?

A: Well, we just kind of worked together and never have got paid for anything in the past and I never have done anything in the past of this nature. So I just considered it more or less a personal favor to help him because like he said if somebody's back needs scratching, you scratch it.

Q. Were you going to do it gratuitously or for free?

A: If that was the way it was to be, that was the way it would have been. I wouldn't have demanded payment. If he had paid me, fine. If he hadn't paid me, fine. That's the way it would have been."

These statements by both parties to the transaction tend to show that Jockish and Hood did not mutually assent to a contract of hire, but rather to a gratuitous undertaking among neighbors and friends. If such was the nature of the agreement, Jockish could not assert a legally enforceable claim to payment, arising from implied contract or otherwise. One cannot agree to be an unpaid volunteer and after the fact assert the existence of an implied contract of hire. (*Board of Education v. Industrial Com.*; *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1973), 9 Ill. App. 3d 102, 291

N.E.2d 836, *aff'd* (1974), 57 Ill. 2d 120, 311 N.E.2d 138.) Any payment which is made to the gratuitous worker is a reciprocal gratuity, not consideration for services rendered that might be enforced by a court of law.

We believe the pattern of the other relationships which are woven through the fabric of this story of ill-fortune tend to support Pekin's contention that Jockish's undertaking was gratuitous. First, there is the relationship between Hood and Mr. Coates, the latter being the individual who loaned the lowboy trailer to Hood, *without charge.* Second, there is the relationship of Hood and Mr. Frost, the latter being the individual who intended to travel to Pontiac to advise and counsel Hood on the purchase of farm equipment, *again without charge.* Finally, there is the relationship of Hood and Jockish himself, the latter being the individual who loaned a log chain and several binders to Hood, *without charge.*

"[I]t is generally recognized that a true employer-employee relationship does not exist in the absence of the payment or expected payment of consideration in some form by employer to employee. * * * [T]he workmen's compensation statutes throughout this country have uniformly been construed to exclude from coverage purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services." (*Board of Education v. Industrial Com.* (1972), 53 Ill. 2d 167, 290 N.E.2d 247, 249.) The facts of the case at bar display a pattern of gratuitous assistance which supports the testimony of Jockish that he did not receive, nor expect to receive, pay or other remuneration for his work on December 2, 1977.

The practice of Hood in hiring laborers by the day is not here persuasive, as the existence of a gratuitous undertaking is always a function of the parties involved and the special circumstances surrounding the undertaking. That Jockish might have insisted on compensation from another for the same work he undertook gratuitously for his friend Hood is not controlling of our decision. Neither is it controlling that Hood paid laborers by the day under other circumstances. It is not the law of this State that an employee-employer relation arises when one lends a hand to his neighbor for a day. *Athletic Association v. Industrial Com.* (1943), 384 Ill. 208, 51 N.E.2d 157.

Jockish never performed any day labor for Hood. Hood never withheld Federal income tax or social security tax payments to Jockish. Jockish was never included in the computation of unemployment or workmen's compensation insurance for Hood's business. Jockish never received nor had any sound expectation of receiving remuneration for his work on December 2, 1977. The evidence will not support a finding that Jockish was an employee, but on the contrary establishes him as a helpful friend and neighbor.

For these reasons, the decision of the circuit court of Putnam County is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.