RONALD C. SKERSTON, SR., Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Joseph Ernat, d/b/a Waltham Livestock Auction Center, Appel-
lee).

Third District (Industrial Commission Division)   No. 3—85—0652WC

Opinion filed August 4, 1986.

Robert J. Welz and Peter F. Ferracuti, both of Ottawa, for appellant.

Kenneth A. Kozel, of Petz & Kozel, of La Salle, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Ronald C. Skerston, Sr., filed an application for adjustment of his claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for injuries sustained while allegedly working for respondent, Joseph Ernat, doing business as Waltham Livestock Auction Center. The arbitrator awarded petitioner three weeks of temporary total disability benefits, 35¼ weeks of permanent partial disability benefits and medical costs for 15% loss of the use of his left arm. The Industrial Commission reversed the arbitrator's decision on the basis that no employment relationship existed between petitioner and the Auction Center. The circuit court of La Salle County confirmed the Commission's decision, and petitioner appeals.

In April 1978 petitioner began working as a farm hand for the Ernat Brothers Farm Partnership, of which Joseph Ernat was a partner. The farm property included a large "sale barn," from which Ernat conducted a livestock auction business as the sole proprietor of the Auction Center. Sales were conducted once each week. The barn also housed cattle, horses, and chemicals owned by the farm partnership. On July 17, 1978, petitioner used a tractor and bucket to lift a drag from where it stood against the sale barn. The drag fell, striking petitioner and injuring his left shoulder.

Petitioner testified that Ernat had him cleaning the area around the sale barn to prepare for the weekly auction. This work included moving the drag, which weighed several hundred pounds. Ernat testified, however, that while he did want the drag moved, petitioner and he had not been cleaning around the sale barn all day in preparation for the auction. Instead, they had been dismantling an old chicken coop prior to moving the drag.

Ernat testified that the drag was located "up against the auctioning room of the barn." Petitioner stated that, previously, the tire on a guest's car became flat when it ran over the drag. Ernat, however, testified that "no one connected with the barn went over this junk," but that a worker spraying the fields had driven over the drag when it was in the field. Petitioner testified that the drag looked homemade and had been used to smooth out a race track located on the farm property which was used by people to whom Ernat rented stables. Ernat testified that the drag, which was left on the property by the farm's previous owner, had been used to take down ridges in his garden, and for the race track.

The farm partnership employed petitioner as the only full-time employee, and employed two part-time employees. The Auction Center employed as many as six or seven people to conduct each auction. Peti-

tioner testified that as a farm hand he engaged in general farm work. He did "everything pertaining to the farm." Additionally, he performed jobs related to the Auction Center when the farm-related work was completed. If petitioner was "caught up with some of the regular work" he would "go to the sale barn in the evening *** and work in the sale barn itself." Petitioner also testified that he cleaned around the sale barn, including removing refuse and old piping, and generally "[g]etting it to look halfway decent." Ernat testified that he had petitioner work in the sale barn "once in a great while *** if he didn't have nothing to do. And this is general farm work. To have him come over and help us." Ernat also testified that petitioner helped to bring Ernat's own cattle to the auction rink. "And he went to a sale when he didn't have nothing else to do or I needed extra help there [to] help me along. Take care of my cattle, or take care of the cattle in the alleys" in the barn. Ernat agreed that petitioner ran cattle down on the scale and weighed them. "Well that was his routine job, I understand. *** He wasn't working for the sale barn. You don't see no record of a check in the sale barn."

Thelma Kyle, the Auction Center's bookkeeper, testified that another Auction Center employee always weighed the auction animals. She remembered seeing petitioner in the sale barn during sales, but could not remember what he was doing at the time. Kyle did not recall issuing any checks to petitioner from the Auction Center payroll. Payroll records were introduced showing that the farm partnership paid petitioner, and that petitioner was not listed as an employee of the Auction Center. After the occurrence, petitioner sought insurance benefits and testified that the insurance-benefits application read "farm accident," and described petitioner as a "hired man on farm—full time." Dr. Samuel Behr, petitioner's treating physician stated that petitioner told him the injury occurred "while working at Waltham Sales Barn on a tractor [while] he was moving a drag."

On October 20, 1980, the arbitrator determined that an employment relationship existed between petitioner and the Auction Center at the time the injury occurred. On January 13, 1984, the Commission reversed the arbitrator's decision, finding that no employment relationship existed. It found that petitioner's moving the drag "was part of his duties in a routine type of cleaning up of the farm premises generally, and although the sale barn and Auction building were also on the premises and the drag was against or near that building, the drag was not in any way related to the auction business [and] its removal was not necessary or particularly related to that business."

It is within the province of the Commission to determine

facts and draw reasonable inferences from the evidence. (*Smith v. Industrial Com.* (1983), 98 Ill. 2d 20, 455 N.E.2d 86.) Whether an employment relationship exists is a factual question. (*Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610.) The role of the court is confined to determining whether the findings of the Commission are contrary to the manifest weight of the evidence. Thus, the court will not discard permissible inferences drawn by the Commission merely because it might have drawn different inferences from the facts. *Lawless v. Industrial Com.* (1983), 96 Ill. 2d 260, 449 N.E.2d 850.

Under section 3(19) of the Workers' Compensation Act, agricultural enterprises employing less than 500 working days of agricultural labor per quarter during the preceding calendar year, which includes Ernat's farm enterprise, are exempted from coverage under the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.3(19).) If at the time of the injury petitioner was an employee engaged in the usual course of his employer's agricultural enterprise, no compensation may be awarded under the Act.

There was ample evidence in the record to support the Commission's finding that, in moving the drag, petitioner fell under the Act's definition of an "employee" engaged in the usual course of his employer's farm enterprise, thus precluding coverage under the Act. Petitioner testified that he was a general farm laborer, the only full-time worker on the farm, who performed a wide variety of jobs, including "everything pertaining to the farm." The normal routine of running a farm necessarily includes removal of debris and generally cleaning areas around farm buildings. Moreover, petitioner's testimony that he was functioning as an employee of the Auction Center when he moved the drag was contradicted by the testimony of Ernat, and that conflicting evidence was a matter for the Commission to determine.

The overall nature of petitioner's duties was farm related. His occasional departures from full-time farm labor to auction-related work were minimal in time and only occurred after his farm work was completed. Significantly, the farm work often overlapped with the Auction Center's business. For example, the barn which housed the auction activities also housed Ernat's own livestock. It would be impractical under the Act to require the employer to try to classify each borderline duty performed by petitioner, a full-time farm laborer, in an attempt to determine whether any percentage of the duty would ultimately benefit the auction business. Clearly, removing debris from the farm property benefited the farm enterprise.

■ The Commission found that petitioner's moving the drag was part of the usual course of his farm labor and only remotely, if at all,

related to the auction business. We cannot say this finding is against the manifest weight of the evidence. Our conclusion is not altered by the fact that the injury occurred near the sale barn the day before an auction, since the sale barn was also used by the farm enterprise, and the work took place during the normal farm-work day. Additionally, the fact that petitioner has previously performed duties which either partially or exclusively benefited the auction business did not make him an auction employee at the time of the injury under the facts presented here. Finally, the fact that the drag might have been a nonagricultural piece of equipment does not necessarily imply that moving it was nonagricultural work, since the area being cleared was farm property. It was not unreasonable for the Commission to classify the duty of removing the drag as general farm work when the equipment was left on the farm by a previous owner, and was unwanted and of no use to Ernat.

A case cited by petitioner as being applicable, *Morgan v. Industrial Com.* (1982), 89 Ill. 2d 502, 433 N.E.2d 1305, actually supports the Auction Center's position. In *Morgan,* claimant worked full-time as a farm laborer and part-time as a caretaker for a cemetery. The same person was owner of the farm and president of the cemetery corporation. The claimant suffocated when silage caved in while he was in the process of feeding livestock. The court confirmed the Commission's denial of compensation, inferring from the facts that most of claimant's time was spent on farm work and that the duties being performed when the accident occurred were farm related.

■ Petitioner also contends that he was a loaned or joint employee. (See *Peterson v. Industrial Com.* (1931), 315 Ill. 199, 146 N.E. 146; *Freeman v. Augustine's, Inc.* (1977), 46 Ill. App. 3d 230, 360 N.E.2d 1245.) We find these doctrines not applicable in view of our conclusion that the Commission's finding that petitioner was working as a farm employee at the time of the injury was not against the manifest weight of the evidence. This is not a situation, for example, where petitioner was injured weighing a customer's cattle to be sold at an auction.

For the foregoing reasons, the judgment of the circuit court of La Salle County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., LINDBERG, BARRY and KASSERMAN, JJ., concur.